[No. 23704-7-I.   Division One.   July 2, 1990.]

VERNE CHARLES THOMPSON, *Respondent,* v. ROBERT L. SMITH, *Appellant.*

362

*Floyd F. Fulle* and *Daniel Brink,* for appellant.

*Timothy Knowling,* for respondent.

SWANSON, J.—Robert L. Smith appeals from a summary judgment in favor of Verne Thompson in a collection action on a promissory note. Smith contends that the trial court erred in permitting Thompson to recover a deficiency judgment after Thompson sold the property securing the note.

In April 1982, Thompson sold Smith a single–family residence for $58,000. Pursuant to the purchase and sales agreement, Smith borrowed $20,000 from private investors, who were secured by a first deed of trust. Smith then made a $15,000 down payment on the house and executed a $43,000 promissory note to Thompson, secured by a second deed of trust. Thompson conveyed the property to Smith by statutory warranty deed dated May 28, 1982.

After making several payments, Smith arranged to sell the house to one Adonjah Israel.[1] On September 21, 1982, Smith and Israel executed a sales agreement providing that Israel would pay $9,000 down and assume the underlying obligations. A handwritten document, signed by Smith and Thompson on September 29, 1982, provided:

---

[1]Israel is not a party to these proceedings.

To whom it may concern:

> Chuck Thompson and Robert Smith have agreed that Robert Smith allows his property at 2422 5th West to Adonjah Israel if Robert Smith remains responsible for the payments on the contract between Chuck Thompson and Robert Smith . . . to be assumed.

Smith conveyed the property to Israel by statutory warranty deed dated September 29, 1982.

Following the sale, Israel made payments on both underlying obligations until he defaulted in June 1984. A real estate agent estimated the property's market value to be $71,000 to $73,000 on June 27, 1984.

Smith, Thompson, and Israel began negotiations regarding the situation. The parties apparently reached an agreement whereby Smith would cash out Israel in exchange for the property and obtain a loan to pay off the first deed of trust, thereby placing Thompson's deed of trust in the first position. On August 20, 1984, Smith signed a letter prepared by Thompson's attorney, which recited, in pertinent part:

> It is my understanding that you [Smith] will provide the $1,000.00 that is required to cash out Mr. Israel and that you will obtain a new loan in order to completely pay off the First Deed of Trust which is now in default. The new loan will result in Mr. Thompson having a First Deed of Trust on the property . . . in the amount of the unpaid balance of his present Second Deed of Trust. *If possible to obtain.*

(Italics ours.)[2] On September 12, 1984, Israel wrote a note to Smith, revoking his offer to convey the house to Smith. After receiving the note from Israel, Smith heard nothing more and maintains his belief that "[Israel and Thompson] had resolved the matter somehow."

On October 22, 1984, Israel conveyed the property to Thompson by statutory warranty deed. The deed recites that it is "for and in consideration of Deed in lieu of foreclosure" and subject to the two deeds of trust.

On November 26, 1984, the beneficiaries of the first deed of trust issued a notice of default to Smith and Thompson.

---

[2]The emphasized passage was apparently added to the letter by Smith.

The amount due was $21,604 plus interest. Smith did not respond to the notice of default; nor does it appear that he had any further direct contact with Thompson following Israel's default.

In late December 1984 or early January 1985, Smith learned of the deed in lieu of foreclosure. In a letter dated January 5, 1985, counsel for Smith wrote to Thompson's counsel that he believed Israel's conveyance in lieu of foreclosure resulted in a merger, extinguishing any liability on Smith's part. In addition, counsel stated that Smith offered "his skills in the real property management area to assist Mr. Thompson," but emphasized that "any efforts on Mr. Smith's part to aid Mr. Thompson grow out of friendship, and not out of a feeling of a concern over liability . . .".

Pursuant to a purchase and sales agreement dated March 1, 1985, Thompson contracted to sell the property to one Kenneth Gorshkow for $48,000.[3] At closing, which occurred on August 8, 1985, Thompson paid off the first deed of trust ($24,800). Net proceeds to Thompson totaled about $18,000.

On January 7, 1987, Thompson filed the instant action against Smith, seeking recovery, among other things, on the promissory note executed by Smith. Thompson's complaint also alleges claims of fraudulent inducement, negligent inducement, and Consumer Protection Act violations. On January 17, 1989, the trial court granted summary judgment in favor of Thompson, entering a judgment of about $33,226 for the principal amount, $16,000 in interest, and attorney's fees and costs totaling $5,000. Following denial of his motion for reconsideration, Smith has appealed.

In reviewing an order of summary judgment, we undertake the same inquiry as the trial court and must

---

[3]Among other terms, the agreement provided: "Seller's acceptance of the terms of this Agreement is expressly conditioned upon the seller obtaining from seller's attorney an opinion that the sale of the subject property pursuant to this Agreement will have no effect on seller's recourse against Robert L. Smith under that promissory note dated May 28, 1982, for which Robert L. Smith is the maker and seller is the payee."

determine whether the materials submitted demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). This court must consider the materials submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

On appeal, Smith advances a variety of theories as to why summary judgment was erroneously entered. Because we find it controlling, however, we address only Smith's contention that he is entitled to the benefit of the antideficiency provision of Washington's deed of trust act, RCW 61.24.100.

■ Washington's deed of trust act, enacted in 1965, was a substantial attempt to streamline antiquated property security procedures in accordance with the needs of modern real estate financing. *See generally* Gose, *The Trust Deed Act in Washington,* 41 Wash. L. Rev. 94 (1966). The objectives of the act were delineated in *Cox v. Helenius,* 103 Wn.2d 383, 693 P.2d 683 (1985):

> First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.

(Citation omitted.) *Cox,* at 387.

The enactment of RCW 61.24, however, contemplated a "quid pro quo between lenders and borrowers." *Donovick v. Seattle–First Nat'l Bank,* 111 Wn.2d 413, 416, 757 P.2d 1378 (1988). Debtors, among other things, relinquished a right to redemption and to a judicially imposed upset price. Creditors, in exchange for inexpensive and efficient nonjudicial foreclosure procedures, sacrificed a substantial benefit that remains available in a judicial foreclosure:

> Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of

the sale price or fair value, and no deficiency decree or other judgment shall thereafter be obtained on such obligation.

Former RCW 61.24.100.

Consequently, the beneficiary of a trust deed is faced with an election of remedies upon default. The beneficiary may

(1) where the trust deed secures a note, sue on the note; (2) foreclose under existing mortgage foreclosure proceedings; or (3) foreclose pursuant to [RCW 61.24].

(Footnotes omitted.) Gose, at 97; *cf. Fluke Capital & Mgt. Servs. Co. v. Richmond,* 106 Wn.2d 614, 624, 724 P.2d 356 (1986) ("remedies of a creditor who chooses nonjudicial procedures are limited to foreclosure alone").

■ Here, by accepting the deed in lieu of foreclosure from Israel and then privately selling the property, Thompson essentially carried out a nonjudicial foreclosure without having to follow the statutory procedures of RCW 61.24. Had he foreclosed nonjudicially pursuant to the statute, he would have been barred from seeking a deficiency judgment on the underlying obligation. Given the policies underlying RCW 61.24, we can find no authority for permitting Thompson to obtain through self–help that which he could not accomplish pursuant to RCW 61.24. Under the specific circumstances of this case, Smith is entitled to the protection of RCW 61.24.100.

We are not persuaded by Thompson's argument that RCW 61.24 is inapplicable simply because he accepted the deed in lieu of foreclosure from Israel rather than Smith. The circumstances here underscore the potential for mischief that would arise if creditors are permitted to circumvent the few statutory requirements imposed by RCW 61.24. *Cf. Lessard v. Smith,* 45 Wn.2d 473, 275 P.2d 730 (1954) (denying deficiency judgment to mortgagee who utilized notice and sale procedures of chattel mortgage statute).

Thompson also maintains that RCW 61.24 is inapplicable because Smith was an "absolute guarantor" of Israel's performance. This argument rests on documents executed

subsequent to the promissory note. Whether Smith was a guarantor is, at best, a factual question that cannot be resolved on summary judgment.[4]

The summary judgment is vacated and the matter remanded for further proceedings consistent with this opinion.

SCHOLFIELD and BAKER, JJ., concur.

---

[4]We offer no opinion on whether a guarantor is entitled to the protection of RCW 61.24.100. *See generally* Annot., *Mortgages: Effect Upon Obligation of Guarantor or Surety of Statute Forbidding or Restricting Deficiency Judgments*, 49 A.L.R.3d 554 (1973).