FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3  AM 9: 20

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY,<br><br>Respondents,<br><br>v.<br><br>CORNERSTONE HOMES & DEVELOPMENT, LLC, a Washington Corporation; and its Guarantor DANIEL L. ALLISON and JEANNE ALLISON, individually and the marital community composed thereof,<br><br>Appellants. | No. 43619-1-II<br><br>PUBLISHED OPINION |

HUNT, J. — Daniel L. and Jeanne Allison, guarantors of three commercial promissory notes issued by Cornerstone Homes & Development, LLC, appeal the superior court's judgment on the pleadings, ordering them to pay a deficiency following a nonjudicial trustee's sale of Cornerstone's properties that secured the notes with construction deeds of trust. The Allisons argue that (1) these construction deeds of trust also secured their commercial guaranty obligations; and (2) the anti-deficiency provisions of the "Washington Deed of Trust Act"[1] prohibit a deficiency judgment against a guarantor when, as here, the underlying deeds of trust secured the guaranty. We agree. We hold that RCW 61.24.100(10) prohibited First-Citizens Bank & Trust Company from obtaining a deficiency judgment against the Allisons because the deeds of trust that First-Citizens non-judicially foreclosed to satisfy Cornerstone's underlying

---

[1] Ch. 61.24 RCW.

No. 43619-1-II

debt also secured the Allisons' commercial guaranty under the express terms of the guaranty, promissory notes, and deeds of trust drafted by First-Citizens' predecessor. Accordingly, we reverse the superior court's deficiency judgment against the Allisons and its award of attorney fees to First-Citizens. We also grant attorney fees to the Allisons on appeal.

## FACTS

In 2003, commercial developer Daniel L. Allison,[2] managing member of Cornerstone Homes & Development, LLC, signed a commercial guaranty, prepared and presented by Venture Bank, for all subsequent loans from Venture Bank to Cornerstone. The language of this guaranty stated that it encompassed all other "related" documents "executed in connection with the indebtedness" then or in the future. Clerk's Papers (CP) at 33.

Three years later, from 2006 to 2007, Venture Bank made several commercial loans to Cornerstone, for which Cornerstone signed three promissory notes, prepared and presented by Venture Bank. As security for these promissory notes, Venture Bank took three separate construction deeds of trust, also prepared and presented by Venture Bank, for three Cornerstone properties. In 2009, Cornerstone defaulted on all three loans and ceased its business operations.

The Washington State Department of Financial Institutions closed Venture Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. The FDIC sold to First-Citizens most of Venture Bank's assets, including its loans to Cornerstone. On October 2 and November 20, 2009, First-Citizens nonjudicially foreclosed on the Cornerstone properties secured by the deeds of trust. Following these sales, there remained a $4,240,424.11 deficiency.

---

[2] This guaranty also obligated Daniel Allison's wife, Jeanne Allison.

2

No. 43619-1-II

First-Citizens sued guarantors the Allisons for this deficiency[3] and moved for judgment on the pleadings. The superior court granted the motion and awarded judgment in favor of First-Citizens for the full deficiency amount and $31,370.00 in attorney fees. The Allisons appeal.

ANALYSIS

I. GUARANTY & DEEDS OF TRUST

The Allisons argue that (1) their obligations under their guaranty were discharged when First-Citizens nonjudicially foreclosed on Cornerstone's deeds of trust, which also expressly secured their guaranty; and (2) thus, RCW 61.24.100 did not allow First-Citizens to obtain a judgment against them for the loan deficiency that remained after the trustee's sale of Cornerstone's property. We agree.

A. Standard of Review

We review de novo a trial court's order granting judgment on the pleadings. *N. Coast Enters., Inc. v. Factoria P'ship*, 94 Wn. App. 855, 858, 974 P.2d 1257 (1999). Interpretation of a contract is a question of law, which we also review de novo. *Wright v. Dave Johnson Ins., Inc.*, 167 Wn. App. 758, 769, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). Washington follows the "objective manifestation theory of contracts"; our primary goal in interpreting a contract is to ascertain the parties' intent. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Thus, we determine intent by focusing on the parties' objective manifestation of their intent in the written contract rather than on the unexpressed subjective intent of either party; in other words, "We do not interpret what was *intended* to be

---

[3] First-Citizens also sued Cornerstone, but it later withdrew this action.

3

written but what *was* written." *Hearst*, 154 Wn.2d at 503, 504 (emphasis added) (citing *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348–49, 147 P.2d 310 (1944)).

The rules that apply to contracts also govern interpretation and construction of a guaranty. *Bellevue Square Managers v. Granberg*, 2 Wn. App. 760, 766, 469 P.2d 969 (1970).[4] By signing a guaranty, the guarantor promises a creditor to perform if the debtor fails to repay the loan. *B & D Leasing Co. v. Ager*, 50 Wn. App. 299, 306, 748 P.2d 652 (1988). Nevertheless,

> [a] guarantor is *not* to be held *liable beyond the express terms* of his or her engagement. If there is a question of meaning, the guaranty is *construed against the party who drew it up* or against the party benefited.

*Matsushita Elec. Corp. of Am. v. Salopek*, 57 Wn. App. 242, 246–47, 787 P.2d 963, *review denied* 114 Wn.2d 1029 (1990) (emphasis added). Here, it is undisputed that Venture Bank drafted the Allisons' commercial guaranty and Cornerstone's deeds of trust.

B. Cornerstone's Deeds of Trust Secured the Allisons' Guaranty

First-Citizens argues that the deeds of trust securing Cornerstone's promissory notes to Venture Bank did not secure the Allisons' guaranty because they contained no such operative

---

[4] *See also Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 699, 952 P.2d 590 (1998).

language.[5] This argument fails.

Contrary to First-Citizens' argument, these deeds of trust, drafted by its predecessor, Venture Bank, expressly stated that they were

> . . . GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF *ANY AND ALL OBLIGATIONS* UNDER THE NOTE, *THE RELATED DOCUMENTS*, AND [THE] DEED[S] OF TRUST.

CP at 22 (emphasis added). These deeds of trust defined (1) "Indebtedness" as "all principal, interest, and other amounts, costs and expenses payable under the Note or *Related Documents*"; and (2) "Related Documents" to include any "*guaranties* . . . whether *now* or hereafter *existing*, executed in connection with the indebtedness." CP at 28 (emphasis added). A plain reading of this language includes the Allisons' earlier guaranty among the "now . . . existing"[6] "Related Documents"[7] that these deeds of trust secured.

Similarly, the Allisons' guaranty, also drafted by Venture Bank, used the same "Related Documents" language as follows:

---

[5] The Allisons' guaranty also contained a provision purporting to waive "any and all rights or defenses" under any law "which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor." CP at 32. But in this appeal, First-Citizens expressly does not claim that the Allisons waived protection under the deed of trust statute; instead, it argues that "the anti-deficiency exception to guarantor liability simply does not apply in the first place." Br. of Resp't at 10. *See*, in contrast, *First-Citizens Bank & Trust Co. v. Reikow*, No. 43181-5-II, 2013 WL 6008624, at *7, n.4 (Wash. Ct. App. June 27, 2013) (noting, in response to First-Citizens' argument that the guarantor waived protection in that case: (1) the Washington Supreme Court's reluctance to enforce a contractual provision waiving statutory requirements governing nonjudicial foreclosure, and (2) that "'intent to waive must be shown by unequivocal acts or conduct which are inconsistent with any intention other than to waive.'" (quoting *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 143 Wn. App. 345, 361, 177 P.3d 755 (2008))).

[6] CP at 28.

[7] CP at 28.

> This Guaranty, *together with any Related Documents*, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.
> [. . .]
> "*Related Documents*" mean all *promissory notes*, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, *deeds of trust*, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or *hereafter existing, executed in connection with the Indebtedness*.

CP at 32-33 (emphasis added). This plain language expressly incorporates future "Related Documents," which unambiguously includes future "deeds of trust" as well as "promissory notes" "executed in connection with the indebtedness," "now or hereafter existing," namely Cornerstone's promissory notes and deeds of trust later executed to obtain this contemplated loan.[8] CP at 33.

Nor is there any ambiguity in Venture Bank's identical use of the term "the Indebtedness,"[9] in both the deeds of trust and the Allisons' guaranty, to refer to Cornerstone's construction loans from Venture bank, secured by the deeds of trust.[10] Thus, we agree with the

---

[8] First-Citizens does not dispute that Daniel Allison executed his guaranty in contemplation of Venture Bank's future construction loans to Cornerstone, for which Cornerstone later signed promissory notes secured by the deeds of trust on Cornerstone's properties. Instead, First-Citizens and amici curiae, Washington Bankers Association and Washington Federal and Union Bank (WBA), argue that the deeds of trust could not have also secured the Allisons guaranty because they did not own the land that Cornerstone provided as security for the deeds of trust.

That the Allisons did not own Cornerstone's property used to secure its deeds of trust does not undermine the plain language of the deeds of trust, which also secure the Allisons' guaranty. Moreover, even if the language of the deeds of trust describing what they secured were arguably ambiguous, we would have to construe it against First-Citizens, which stands in the shoes of the guaranty's drafter, Venture Bank. *See Matsushita*, 57 Wn. App. at 246–47.

[9] CP at 33.

[10] Amici banks make a compelling argument that accepting the Allisons' argument here would (1) call into question many similar documents securing and guaranteeing commercial loans; and (2) run contrary to the general purpose that personal guaranties serve in the banking industry,

Allisons that these reciprocal plain terms operate together such that the deeds of trust expressly secure the Allisons' guaranty in addition to Cornerstone's construction loan.[11]

## II. ANTI-DEFICIENCY STATUTE RCW 61.24.100

Having determined that the deeds of trust secured the Allisons' guaranty, we next determine whether First-Citizens can obtain a deficiency judgment against the Allisons for the remaining amount due on Cornerstone's loan following the trustee's sale of Cornerstone's property by nonjudicial foreclosure. To make this determination, we address whether RCW 61.24.100 offers the same anti-deficiency judgment protections to commercial guarantors that it provides to borrowers. Again, we discern the statute's plain meaning from the ordinary meaning of the language at issue, the context in which that statutory provision is found, related provisions, and the statutory scheme as a "whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

Washington's anti-deficiency statute, RCW 61.24.100, categorically prohibits a deficiency judgment against any *borrower* or *guarantor* following a nonjudicial foreclosure, subject to certain exceptions for deeds of trust securing commercial loans[12]:

---

namely to assure an additional source of payment to lenders when borrowers default and their securities are insufficient to satisfy the debt. Here, however, we confront specific language that Venture Bank selected for inclusion in these documents and which we must construe against the drafting bank, even if the bank's specific language choice subverts this general guaranty purpose.

[11] Even if these documents were ambiguous, their interpretation presents an issue of first impression in Washington. A Michigan appellate court, however, addressed identical contract language in *Greenville Lafayette, LLC v. Elgin State Bank*, 296 Mich. App. 284, 818 N.W.2d 460 (2012), concluding that the "plain language" of the deed of trust "specifically include[d] guaranties in the indebtedness secured by the mortgage." *Greenville*, 296 Mich. App. at 291.

[12] *See, e.g.*, RCW 61.24.100(10), *infra*.

7

> Except to the extent permitted in this section for deeds of trust securing commercial loans, *a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against* any borrower, grantor, or *guarantor* after a trustee's sale under that deed of trust.

RCW 61.24.100(1) (emphasis added). *See also Thompson v. Smith*, 58 Wn. App. 361, 365, 793 P.2d 449 (1990). Under this statute a creditor sacrifices its usual right to a deficiency judgment when the creditor elects the "inexpensive and efficient" nonjudicial foreclosure procedure to satisfy a defaulted loan.[13] *Thompson*, 58 Wn. App. at 365.

Subsection (10) creates an exception to subsection (1)'s general prohibition against deficiency judgments following nonjudicial foreclosure by allowing the lender to sue a commercial loan guarantor if the guaranty was *not* secured by the foreclosed deed of trust:

> A trustee's sale under a deed of trust securing a commercial loan does not preclude an action to . . . enforce any obligation of a . . . guarantor if that obligation . . . *was not secured by the deed of trust.*

---

[13] Amici WBA argue that it would "accomplish nothing" to have a deed of trust securing a guaranty. Br. of Amici Curiae WBA at 9. We note that First-Citizens triggered the ultimate protections afforded by the anti-deficiency statute when it voluntarily elected to avail itself of the relatively "inexpensive and efficient" nonjudicial foreclosure option. *Thompson*, 58 Wn. App. at 365. Moreover, RCW 61.24.100(9) specifically contemplates a party's ability to forego its contractual right to recover any portion or all of a deficiency, which First-Citizens did when its predecessor, Venture Bank, drafted the deeds of trust in such a manner as to secure the Allisons' guaranty. As the Allisons correctly note,

> First-Citizens had a variety of remedies available to it to collect on the Cornerstone debt. It could have foreclosed judicially and simultaneously pursued a deficiency against both Cornerstone and the guarantor. It could have sued on the Guaranty first, leaving the foreclosure option available as a later remedy. Or it could (and did) choose the efficient remedy of a Trustee's sale pursuant to the Deed of Trust Act without judicial oversight.

Br. of Appellant at 24.

RCW 61.24.100(10)[14] (emphasis added). Under the statutory construction principle *expressio unius est exclusio alterius*[15], the above language implies that (1) this express exception to the anti-deficiency judgment statute is the only exception under these circumstances; and (2) therefore, further implies that where a guaranty *was* secured by the foreclosed deed of trust (which also secured a commercial loan), the lending bank *cannot* sue the guarantor for any deficiency remaining after the trustee's sale of the secured property.[16]

---

[14] *See also* RCW 61.24.100(6), which addresses a lender's ability to obtain a deficiency judgment against a guarantor who granted a deed of trust to secure its guaranty of a commercial loan (which is not the case here):

> A *guarantor granting a deed of trust* to secure its guaranty of a commercial loan shall be subject to a deficiency judgment following a trustee's sale under that deed of trust only to the extent stated in subsection (3)(a)(i).

(Emphasis added). Under its plain language, this statutory provision does not apply here, however, because guarantor Allisons did *not* grant the foreclosed deeds of trust on Cornerstone's property. Instead, it was Cornerstone that granted these deeds of trust, to secure its commercial loan.

[15] "Expression of one thing in a statute implies exclusion of others, and this exclusion is presumed to be deliberate." *State v. Kelley*, 168 Wn.2d 72, 83, 226 P.3d 773 (2010) (statute's exception of some weapons listed in firearm enhancement statute shows legislative intent that crimes involving *other* weapons not on the list are *not* to be excepted) (citing *State v. Delgado*, 148 Wn.2d 723, 729, 63 P.3d 792 (2003), which similarly explained: "'Under *expressio unius est exclusio alterius*, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other.'" (quoting *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002))).

[16] Amici contend that this statutory interpretation conflicts with RCW 61.24.100(6), *see* n.14 and with RCW 61.24.100(3)(c), which provides:

> This chapter does not preclude any one or more of the following after a trustee's sale under a deed of trust securing a commercial loan executed after June 11, 1998:
>
> [. . . .]
>
> (c) *Subject to this section,* an action for a deficiency judgment against a guarantor if the guarantor is timely given the notices under RCW 61.24.042.

(Emphasis added). We disagree.

By its express language, RCW 61.24.100(3)(c) is "Subject to" other subsections of RCW 61.24.100, such as RCW 61.24.100(10), which limits RCW 61.24.100(3)(c) by allowing a

As we have already held, the nonjudicially foreclosed deeds of trust secured the Allisons' guaranty, in addition to securing Cornerstone's promissory notes to Venture Bank. This security triggered the statutory limitation in RCW 61.24.100(10), which prohibits a deficiency judgment action against a guarantor in the Allisons' situation: The Allisons' guaranty was secured by Cornerstone's deeds of trust under the plain language of these deeds of trust and other "Related documents,"[17] all drafted by Venture Bank in contemplation of Cornerstone's construction loan. In short, the general statutory prohibition against deficiency judgments applies to prohibit deficiency judgments against deed-of-trust-secured guarantors like the Allisons, despite their role as guarantors of a commercial loan, when the lender elects nonjudicial foreclosure to obtain repayment of a defaulted commercial loan secured by deeds of trust that secure not only the loan but also the guaranty. RCW 61.24.100(10).

We hold that RCW 61.24.100's anti-deficiency protections prohibit a lender from obtaining a deficiency judgment against a guarantor whose guaranty was secured by a non-judicially foreclosed deed of trust that also secured the guaranty. Based on this statute and the plain language of the guaranty and the deeds of trust, both drafted by the lender, we further hold that the superior court erred in awarding First-Citizens a deficiency judgment against the Allisons after the nonjudicial foreclosure sales of the properties secured by the deeds of trust.

---

deficiency judgment action against a guarantor where the nonjudicially foreclosed deeds of trust did *not* also secure the guaranty, along with securing the commercial loan; because the Allisons' guaranty was secured by the deeds of trust, this subsection does not apply here. *See also* RCW 61.24.100(3)(a)(i), which allows a deficiency judgment action against a guarantor who caused a decrease in the judicially foreclosed property's fair value by waste or who wrongfully retained proceeds from the property; because there were no allegations of waste or wrongful retention of proceeds here, this subsection also does not apply.

[17] CP at 33.

## ATTORNEY FEES

Both parties request attorney fees under RAP 18.1 and the terms of the Allisons' guaranty. Although this commercial guaranty expressly purports to entitle only the lender to attorney fees,[18] RCW 4.84.330[19] provides that such unilateral attorney fee provisions give reciprocal rights to all parties to the contract. Because the Allisons are parties to the guaranty that First-Citizens sought to enforce and they are also the prevailing party, we award them attorney fees on appeal.

We reverse the superior court's deficiency judgment and attorney fee award to First-Citizens and remand to the superior court. We also award the Allisons attorney fees on appeal.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Johanson, J.

---

[18] The Allisons' guaranty stated: "Guarantor agrees to pay upon demand all of Lender's . . . attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." CP at 32.

[19] RCW 4.84.330 provides:
> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.