# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WASHINGTON FEDERAL SAVINGS, )
a United States corporation, )
                               )
     Respondent/Cross-Appellant, )
                               )
           v.                    )
                               )
ALGO, INC., a Washington corporation; )
and ALLEN R. GRANT, individually and )
his marital community; JANE DOE )
GRANT, her marital community, )
                               )
     Appellants/Cross-Respondents. )

No. 72114-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 21, 2017

TRICKEY, A.C.J. — Washington Federal Savings (Washington Federal) and Algo, Inc., Allen R. Grant, and Jane Doe Grant (collectively, Grant) both appeal the trial court's order granting summary judgment based on Grant's breach of a settlement agreement term sheet (Settlement Agreement) between the parties.

Washington Federal argues that the trial court erred in awarding less than the Settlement Agreement's value. We agree because Grant's material breach rendered the entire value of the Settlement Agreement due immediately and reverse and remand for entry of judgment of $1 million.

Grant argues that the trial court erred in awarding Washington Federal prejudgment interest. We disagree and affirm the trial court. Grant argues that the trial court erred in awarding Washington Federal attorney fees in general and awarding excessive attorney fees. We agree and reverse the trial court's award of attorney fees to Washington Federal.

## FACTS

In 2011, Grant defaulted on his loan obligations to Washington Federal. Washington Federal nonjudicially foreclosed on the real property securing the loan and sued Grant for a deficiency of $2,414,633.60. Following mediation, the parties executed the Settlement Agreement on August 1, 2012.

The Settlement Agreement provided that Grant would agree, via promissory note, to pay a principal sum of $1 million.[1] The note would have made payment due in 60 months from the date of the Settlement Agreement, with interest set at 0 percent for the term and 12 percent per annum in the event of default. It would have allowed for recovery of attorney fees in an action to enforce the terms of the note and for discounts if the discounted amount was paid in full within specified time periods. The Settlement Agreement required that Grant secure the note with real property. By its terms, the Settlement Agreement was binding and enforceable, despite contemplating the parties executing future documents.

Grant never signed a promissory note and never secured his payment obligation with real property. On February 11, 2013, Grant repudiated the Settlement Agreement, and Washington Federal soon moved to withdraw the notice of settlement.

Soon after, the parties resumed the deficiency judgment litigation. Washington Federal moved for summary judgment on its underlying claims. The trial court granted the motion in part and set the remaining claims and defenses for trial.

---

[1] Washington Federal sent Grant a draft promissory note, which Grant never signed.

2

Washington Federal amended its complaint on January 13, 2014, to add a claim for breach of the Settlement Agreement. Washington Federal moved for summary judgment on its new claim, requesting $1 million as a principal award, interest from the date of default, and attorney fees and costs. Washington Federal's motion noted that the "parties' remaining claims and counterclaims should be dismissed with prejudice" if the motion was granted.[2] The trial court granted the motion in part and dismissed the deficiency judgment claim. It awarded Washington Federal $1 million, denied its request for attorney fees and costs, and requested supplemental briefing on the issue of prejudgment interest.

Both parties moved for reconsideration. Washington Federal challenged the denial of attorney fees and costs, and Grant challenged the principal award amount and prejudgment interest. The trial court granted both motions. It reduced the judgment against Grant to $850,000, awarded Washington Federal prejudgment interest at a rate of 12 percent per annum from February 11, 2013, and awarded costs and reasonable attorney fees to Washington Federal.

Washington Federal requested a total of $151,330.04 in costs and fees incurred since August 1, 2012, the date of the mediation between the parties. The trial court adopted Washington Federal's findings and conclusions, and awarded the full amount requested. Both parties appeal.

While the appeal was pending, Grant filed for chapter 11 bankruptcy protection. The bankruptcy court treated Washington Federal as a general

---

[2] Clerk's Papers (CP) at 176.

unsecured creditor because of Grant's failure to secure his obligation under the Settlement Agreement.

## ANALYSIS

### Damages for Breach of Contract

Washington Federal argues that the remedy for Grant's material breach of the Settlement Agreement is $1 million because a nonbreaching party may demand the entire value of a contract due immediately. Grant argues that $850,000 is the proper amount because that amount would have been due had a promissory note been executed and paid at the time of breach. We conclude that Washington Federal was entitled to $1 million as a principal amount because Grant's material breach of the Settlement Agreement allowed Washington Federal to demand the entire $1 million due immediately.

Review of a trial court's decision on summary judgment is de novo. Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005). Summary judgment is appropriate if there is "'no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.'" Dean v. Fishing Co. of Alaska, Inc., 177 Wn.2d 399, 405, 300 P.3d 815 (2013) (citing CR 56(c)).

The trial court granted Washington Federal's motion for summary judgment on Grant's breach of the Settlement Agreement. "'Any unjustified failure to perform when performance is due is a breach of contract which entitles the injured party to damages.'" Colorado Structures, Inc. v. Ins. Co. of the West, 161 Wn.2d 577, 589,

167 P.3d 1125 (2007) (quoting LAWRENCE P. SIMPSON, HANDBOOK OF THE LAW OF CONTRACTS §187, at 377 (2d ed. 1965)).

A material breach is one that is not slight or insubstantial. Colorado Structures, 161 Wn.2d at 588-89. If a party materially breaches a contract, the nonbreaching party may elect either the remedial right to damages for total failure of full performance, or treat the contract as continuing and claim damages limited to compensation for the defective performance. Colorado Structures, 161 Wn.2d at 589. When one party repudiates a contract, the other party may treat that as a breach which excuses its own performance. CPK, Inc. v. GRS Const. Co., 63 Wn. App. 601, 620, 821 P.2d 63 (1991).

Grant does not dispute that he materially breached the Settlement Agreement by failing to secure Washington Federal's interest and repudiating the contract. Grant's failure to secure his obligation was not a slight or insubstantial breach.[3] Also, Grant unequivocally informed Washington Federal that he would not be able to perform under the Settlement Agreement. Each action is a sufficient basis to find that Grant materially breached the Settlement Agreement. Grant's material breach gave Washington Federal the option to treat the breach as a total failure of performance, and gave Washington Federal an immediate cause of action.

Washington Federal argues that Grant's breach entitles it to $1 million in damages because that is the full value of the Settlement Agreement. A party's recovery of damages is limited to the amount they would have received had the

---

[3] As noted previously, because Washington Federal was treated as an unsecured creditor in Grant's bankruptcy proceeding, it suffered a delay in payment and a loss of priority.

contract been fully performed. Rathke v. Roberts, 33 Wn.2d 858, 879-80, 207 P.2d 716 (1949). The interpretation of an unambiguous contract is a question of law and is reviewed de novo. Dice v. City of Montesano, 131 Wn. App. 675, 684, 128 P.3d 1253 (2006). "A contract is ambiguous if its terms are uncertain or they are subject to more than one meaning." Dice, 131 Wn. App. at 684.

The Settlement Agreement states that the "[d]efendants agree to pay Washington Federal $1 million in the form of a promissory note."[4] The note would have included terms allowing discounts if the discounted amount was paid in full within set time periods. For example, if a promissory note had been executed, Grant could have received a 15 percent discount if he paid $850,000 in full to Washington within 24 months of the execution of the Settlement Agreement.

Based on the unambiguous language of the Settlement Agreement, the principal amount due under the Settlement Agreement was $1 million.[5] If Grant had not breached the Settlement Agreement, Washington Federal would have received a secured promissory note for $1 million and the liquidated sum of $1

---

[4] CP at 160-161. Washington Federal argues in the alternative that an acceleration clause contained in the draft promissory note controls and entitles it to the full $1 million following Grant's breach. A contract requires an offer, acceptance, and consideration. Bulman v. Safeway, Inc., 144 Wn.2d 335, 351-52, 27 P.3d 1172 (2001). The parties agree that the draft promissory note was never executed because Grant never signed it. Accordingly, the draft promissory note's acceleration clause is not relevant.

[5] Washington Federal also argues that Grant's failure to challenge the Settlement Agreement's principal value of $1 million during the settlement negotiations shows that he understood that $1 million was the principal sum. Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish the meaning of the writing, whether or not integrated. Berg v. Hudesman, 115 Wn.2d 657, 668, 801 P.2d 222 (1990) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 214(c)). When the parties were reviewing the Settlement Agreement, Grant sought clarification only of when interest would begin to accrue. Grant's failure to dispute the principal sum due may be evidence that the intended principal sum was $1 million.

million from Grant in five years. Because of Grant's breach, Washington Federal will receive nothing.

Further, the discounted sums claimed by Grant were only available if the promissory note had been executed and the required amount was paid within the specified time periods. Because these steps were never performed, the value of the bargain for Washington Federal remained $1 million. Accordingly, the trial court erred in awarding only $850,000.

Based on the discounts in the Settlement Agreement, Grant argues he should have to pay only $850,000. The discounted values were available only if Grant paid the full discounted value within the stated time periods after properly executing a promissory note. Grant acknowledges that he did not pay the discounted amount in full within the stated time periods. Indeed, Grant never made a single payment. We conclude that Grant's failure to satisfy these conditions precludes him from receiving a discount on his debt.

Grant argues in the alternative that the trial court's award of $850,000 represents the $1 million principal sum discounted to present value. Grant relies on cases applying discounts to future profits that would have been earned under an employment contract and to the value of disputed real property that a party had an option to buy in five years. Yarno v. Hedlund Box & Lumber Co., 129 Wash. 457, 225 P. 659, modified, 227 P. 518 (1924); McFerran v. Heroux, 44 Wn.2d 631, 643-44, 269 P.2d 815 (1954).

Discounts to present value do not apply here. Washington courts have discounted damage awards to present value in several contexts, but generally not

for material breach of contracts with liquidated sums, as is at issue here. See, e.g., Cornejo v. State, 57 Wn. App. 314, 325-26, 788 P.2d 554 (1990) (calculation of future losses by considering the cost of an annuity); In re Marriage of Pilant, 42 Wn. App. 173, 179, 709 P.2d 1241 (1985) (applying discount factors to pension to calculate present cash value); Warner v. McCaughan, 77 Wn.2d 178, 183, 460 P.2d 272 (1969), disagreed with on other grounds by Wooldridge v. Woolett, 96 Wn.2d 659, 663, 638 P.2d 566 (1981) (discounting prospective loss of earnings during normal life expectancy). Discounts to present value have been generally applied to profits, losses, and earnings that would have necessarily been received at a future date.

In contrast, the Settlement Agreement contains a liquidated sum that became due on Grant's material breach, rather than remaining due at the end of the term of the Settlement Agreement. This is distinguishable from the context of future profits, losses, and earnings. Therefore, we conclude that the principal sum awarded to Washington Federal under the Settlement Agreement was not subject to a discount to present value.

## Award of Prejudgment Interest

The trial court awarded prejudgment interest to Washington Federal. Grant argues that he did not wrongfully deprive Washington Federal of funds because the Settlement Agreement did not require payment until August 1, 2017. We disagree and affirm the trial court's award of prejudgment interest.

"The award of prejudgment interest is reviewed for abuse of discretion." Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton, 158 Wn.2d 506, 519,

145 P.3d 371 (2006). In Washington, interest prior to judgment is allowable when an amount claimed is "liquidated," or when an "unliquidated" claim is for an amount due upon a contract for the payment of money and the amount due is computable with reference to a fixed contractual standard, without reliance on opinion or discretion. Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 32, 442 P.2d 621 (1968). A "liquidated" damages claim is one where evidence furnishes data which, if believed, makes it possible to precisely compute the amount, without reliance on opinion or discretion. Prier, 74 Wn.2d at 32. "[A] sum of money named in and covenanted to be paid by an express contract, where the liability to pay the principal sum is undisputed, is a 'liquidated' sum." Prier, 74 Wn.2d at 32-33 (quoting CHARLES T. MCCORMICK, DAMAGES § 54 (Hornbook Series 1935)).

Prejudgment interest is appropriate when a party retains funds rightfully belonging to another, and thereby deprives the other of the "use value" of the funds. Mahler v. Szucs, 135 Wn.2d 398, 429, 957 P.2d 632 (1998); Rufer v. Abbott Labs., 154 Wn.2d 530, 552, 114 P.2d 1182 (2005). Prejudgment interest accrues from the date of the default or breach at issue. Prier, 74 Wn.2d at 34.

Grant materially breached the Settlement Agreement on February 11, 2013. The total contract price under the Settlement Agreement was $1 million. This sum is "liquidated" because it can be calculated with exactness without reliance on opinion or discretion. Accordingly, a liquidated sum of $1 million became due to Washington Federal from Grant on February 11, 2013. Grant failed to pay the sum and deprived Washington Federal of the "use value" of the money. The trial court

properly determined that prejudgment interest began to accrue from the date of Grant's breach.

Grant argues that the Settlement Agreement requires payment by August 1, 2017, and, therefore, he has not wrongfully retained the disputed funds. An injured party has a right to demand full performance of a contract at the time of material breach. Colorado Structures, 161 Wn.2d at 589. As discussed above, Grant's breach of the Settlement Agreement rendered the $1 million due immediately, rather than on the original contract date of August 1, 2017.

### Award of Attorney Fees to Washington Federal

The trial court granted Washington Federal's claim for attorney fees and costs. Grant argues that the trial court erred because the Settlement Agreement does not provide for attorney fees in an action to enforce its terms. We agree with Grant and reverse the trial court's award of attorney fees to Washington Federal.

A trial court's initial determination of the legal basis for an award of attorney fees is reviewed de novo. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). Each litigant is responsible for paying its own fees unless specifically authorized by contract, statute, or a recognized ground of equity. Dayton v. Farmers Ins. Group, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). The court should award fees if a contract specifically provides for the recovery of attorney fees incurred to enforce its provisions. RCW 4.84.330; C-C Bottlers, Ltd. v. J.M. Leasing, Inc., 78 Wn. App. 384, 386-87, 896 P.2d 1309 (1995).

Here, the Settlement Agreement states that "[i]n any action to enforce the note, the prevailing party shall be entitled to recover its reasonable costs, including

attorneys' fees."[6] The Settlement Agreement itself does not authorize recovery of attorney fees in an action to enforce the terms of the Settlement Agreement. Washington Federal prevailed on an action to enforce the Settlement Agreement, not an action to enforce the draft promissory note. Therefore, the trial court erred in awarding Washington Federal attorney fees.

Washington Federal argues that the attorney fees provision contained in the draft promissory note should apply to the present case. The draft promissory note was never executed because Grant never signed it, and its terms never became binding on the parties. Accordingly, Washington Federal cannot rely on it to recover attorney fees.

Washington Federal argues that the prevention of performance doctrine should apply and bar Grant from claiming that the draft promissory note should not be given effect. A party cannot claim impossibility or excuse of nonperformance where his wrongful acts are the cause of the impossibility or nonperformance. Wolk v. Bonthius, 13 Wn.2d 217, 219, 124 P.2d 553 (1942). For example, a defendant cannot argue that new road construction and sewage treatment statutes render performance financially impossible if the defendant is only subject to new legislation due to its breach of the contractual timelines. Pacific County v. Sherwood Pac., Inc., 17 Wn. App. 790, 799, 567 P.2d 642 (1977); McDonald v. Wyant, 167 Wn. 49, 55, 8 P.2d 428 (1932) (party's failure to collect the amount due to him on logs marketed, and failure to market other cut logs, prevented the party from depriving the other of the benefit of the contract); Blair v. Wilkerson Coal

---

[6] CP at 160.

11

& Coke Co., 54 Wash. 334, 338-39, 103 P. 18 (1909) (defendant's refusal to allow plaintiffs to continue with construction pursuant to contract precluded defendant from arguing that plaintiffs had not completely performed under the contract).

Washington Federal contends that Grant should be bound by the terms of the draft promissory note because his refusal to sign the draft promissory note was improper. The prevention of performance doctrine is inapplicable because the draft promissory note was not a contract whose performance could be prevented. The prevention of performance doctrine focuses on a party's wrongful acts interfering with the performance of an existing contract. Grant's refusal to sign the draft promissory note prevented the note from becoming a valid and binding contract. The provisions of the draft promissory note did not become binding on either party. Washington Federal's reliance on the prevention of performance doctrine is misplaced. Therefore, the draft promissory note's attorney fees provision is not binding on Grant.

Finally, Washington Federal argues that it should be able to recover its fees under the attorney fees provision contained in the original loan documents between Grant and Washington Federal. This provision applies to actions to enforce the terms of the original loan documents. These documents are not at issue in the current appeal and were not the basis for summary judgment below. Washington Federal's second motion for summary judgment acknowledged that the underlying deficiency judgment claim would be dismissed with prejudice if the motion was granted. The court granted Washington Federal's motion for summary

judgment and dismissed its other claims. Therefore, the attorney fees provision contained in the original loan documents is inapplicable to the current dispute.

Washington Federal argues that it is entitled to attorney fees because Grant would have been awarded attorney fees if he had prevailed below. Washington Federal bases its argument on a letter Grant wrote to Washington Federal, in which he claims that he will be entitled to attorney fees if he prevails. Washington construes unilateral attorney fee provisions as bilateral. First-Citizens Bank & Trust Co. v. Cornerstone Homes & Dev., LLC, 178 Wn. App. 207, 218-19, 314 P.3d 420 (2013). Thus, if the Settlement Agreement were a proper basis for attorney fees for Grant, it would be a proper basis for an award to Washington Federal. But, despite Grant's claim, he would not have been entitled to attorney fees if he had prevailed below.

Washington Federal's argument that Grant could recover fees, relying on First-Citizens, is unpersuasive. In First-Citizens, the court held that RCW 61.24.100(10) prohibited First-Citizens from obtaining a deficiency judgment against the guarantors of foreclosed property. 178 Wn. App. at 209. The guaranty at issue in First-Citizens was properly executed and bound the parties. 178 Wn. App. at 209-10. The court held that RCW 61.24.100 precluded First-Citizens from obtaining a deficiency judgment.[7] First-Citizens, 178 Wn. App. at 211, 218.

Unlike the guaranty in First-Citizens, the draft promissory note was never executed and summary judgment was granted for breach of the Settlement

---

[7] Washington Federal cites First-Citizens as holding that the attorney fees provision was held valid despite the underlying documents being inapplicable to the dispute. This misconstrues the holding of First-Citizens, as the court did not hold that the underlying documents were inapplicable.

13

Agreement. Neither party could have used the draft promissory note as a basis to recover attorney fees.

### Attorney Fees on Appeal

Washington Federal requests attorney fees and costs on appeal. Where a statute authorizes the award of fees to the prevailing party, they are available on appeal as well as in the trial court. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 715-16, 9 P.3d 898 (2000); see also Richter v. Trimberger, 50 Wn. App. 780, 783-86, 750 P.2d 1279 (1988) (applying the same principle to action seeking fees under RCW 4.84.330).

There is no contractual basis below for the award of attorney fees to Washington Federal and, therefore, it has no basis to request them on appeal.

We reverse and remand for entry of judgment of $1 million and reverse the award of attorney fees. We affirm the trial court's award of prejudgment interest. We deny Washington Federal's request for attorney fees and costs on appeal.

Trickey, ACJ

WE CONCUR:

Mann, J.

LEACH, J. (dissenting) — The majority's approach to Washington Federal Savings' damages reflects a dramatic departure from Washington case law and assumes facts not in the record. The majority awards the bank a judgment for the full amount of a debt not due. Over 100 years ago, our Supreme Court stated, "We know of no case, and certainly none is cited, to the effect that a judgment may be had for a debt not due."[1] I know of no case changing this well-established rule. The record provides no basis for determining, on summary judgment, the amount of the bank's actual damages. For these reasons, I dissent.

This lawsuit arises out of a secured loan Washington Federal made to ARG Development LLC. In addition to a deed of trust, the bank received as security for the loan the guarantees of Algo Inc. and Allen R. Grant. After ARG defaulted, the bank foreclosed the deed of trust. But after crediting the sale price, ARG still owed a deficiency of $2,414,633.60. So the bank sued Algo and Grant on their guarantees. The parties mediated and agreed to the settlement involved in this decision.

At the end of the mediation the parties signed a settlement term sheet. This document contemplated preparation of more detailed settlement documents, including a promissory note and a deed of trust. But it also stated that it was a "binding and enforceable agreement." The term sheet included three paragraphs and one omission significant to my analysis. The three paragraphs:

1. Defendants agree to pay Washington Federal $1 million in the form of a promissory note under the following terms:

---

[1] Mondioli & Stewart v. Am. Bldg. Co., 83 Wash. 584, 589, 145 P. 577 (1915).

    a. Payment shall be due in 60 months from the date of this agreement.
    b. Interest shall be 0% for the five-year term;
    c. Interest shall accrue at 12% per annum in the event of default;
    d. In any action to enforce the note, the prevailing party shall be entitled to recover its reasonable costs, including attorneys fees;
    e. The following discounts shall apply if the discounted amount is paid in full within the time periods set forth below:

| | |
|---|---|
| if paid within 24 months: | 15% |
| if paid within 36 months: | 10% |
| if paid within 48 months: | 5% |

2. The note shall be secured by a first position deed of trust encumbering one or more properties owned by GO Merced GP (either the 145-acre parcel or the 56-acre parcel), to be determined and effectuated as follows:
    a. By August 10, 2012, Mr. Grant shall identify the parcel to be encumbered and provide for that parcel a copy of the preliminary title insurance and the most recent tax-assessor's appraisal of the property.
    b. Within 30 days of the date on which Mr. Grant identifies the parcel to be encumbered, the bank shall obtain an appraisal of that property, at the bank's expense.
    c. If the appraised value is less than $1 million, the parties shall negotiate additional collateral, which may include the 56-acre parcel owned by GO Merced.
    d. In addition to providing a deed of trust, Mr. Grant will pledge his membership interest or other ownership interest in any entity holding title to the property to be encumbered.

3. All claims against all parties in the litigation will be dismissed with prejudice within five days of the date upon which the promissory note and deed of trust referred to in paragraphs 1 and 2 are executed and the deed of trust is recorded. The parties shall immediately notify the court of this settlement by filing a notice of settlement of all claims pursuant to Local Rule CR 41(a)(2).

The omission: the term sheet does not contain an acceleration clause or similar provision

allowing the bank to advance the date for payment of the $1 million if Grant defaults.

The term sheet imposed three pertinent obligations on Grant and Algo: (1) payment of $1 million in 60 months, (2) delivery of a signed promissory note, and (3) delivery of a first position deed of trust securing payment of the note. When Grant and Algo did not deliver the note and deed of trust, the bank first asked for summary judgment on the claims asserted in its complaint. When the trial court denied this relief, the bank asked for summary judgment on the term sheet based on Grant's failure to provide the note and deed of trust. The bank requested damages for this breach and dismissal of all remaining claims of all parties. The bank's motion asked for $1 million in damages but provided no legal analysis to support that amount.

Grant disputed the amount of the bank's damages, relying on the discounts described in the term sheet and the undisputed fact that the term sheet called for a payment in 60 months, requiring a discount to present value. The bank responded with two arguments. First, the term sheet provides for 12 percent interest on default. Second, the court could apply the current discount rate of .75 percent charged by the Federal Reserve Bank to its member banks. Washington Federal provided no evidence that this was an appropriate discount rate and asked the court to take judicial notice of the rate amount.

Grant asked the trial court to reconsider its initial decision to award the bank damages of $1 million. In response, the bank, for the first time, argued that extrinsic evidence established its right to acceleration of the amount due in the event of Grant's breach. The bank claimed that the promissory note prepared by the bank's lawyer to

implement the term sheet showed the parties' intent to provide for debt acceleration because Grant never objected to the following note provision:

> **6. DUE ON SALE:** This Note is secured by a Deed of Trust and a Pledge of Membership Interest (the "Collateral") and the property described in such security instruments may not be sold or transferred without the Holder's consent. The breach of this provision shall constitute and [sic] an event of default, and Holder may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.

The trial court did not accept this argument. Instead, it modified the principal judgment amount to $850,000. On cross appeal the bank now challenges this decision, claiming it is entitled to the principal sum of $1 million.

On appeal, the bank appropriately makes no claim that Grant's failure to deliver the note and deed of trust caused it $1 million in damages because the record provides no support for this claim. The record contains no evidence of the appraised values of any of the real estate parcels described in the term sheet as possible collateral. The term sheet itself recognizes that the parcels may not have a $1 million value and provides for the negotiation for additional collateral. The record includes no evidence of the amount that the bank could realize from the sale of the described collateral or any evidence about Grant's financial circumstances or future ability to pay an unsecured debt. Thus, the record contains no evidence from which the court could determine, by summary judgment, the amount required to place the bank in the same position as it would have been had Grant delivered the signed note and security agreement.

Recognizing the shortcomings of the record, the bank limits its argument on appeal. It contends that it had the right to accelerate the due date for payment of the $1

million when Grant defaulted. It relies exclusively on the quoted paragraph 6 of the draft note. This argument fails for two reasons. First, paragraph 6 is not a general acceleration clause that advances the due date for payment upon any default. It only purports to accelerate the due date if the collateral is sold without the note holder's consent. The absence of a general acceleration provision in the note prepared by the bank undermines rather than advances its position. Paragraph 6 shows that the bank was aware of the need for an acceleration clause, and the absence of a general acceleration clause in the note suggests no mutual intent to include one in the transaction.

Second, the bank's preparation of a note well after the signing of the term sheet and Mr. Grant's failure to identify objections to this note in a later deposition provide no evidence of mutual intent about a breach of the term sheet. At best, these facts show that the terms of the note were acceptable to Mr. Grant had he been willing to provide the required collateral.

For these reasons, the bank's claim of a right to accelerate the term sheet due date for payment fails. Without citation to any authority or evidence, the majority states, "We conclude that Washington Federal was entitled to $1 million as a principal amount because Grant's material breach of the Settlement Agreement allowed Washington Federal to demand the entire $1 million due immediately." The majority fails to cite any supporting authority or evidence for good reason. None exists.

For over a century, Washington courts have required that a contract contain a provision allowing a creditor to advance the due date for payment before allowing a

creditor to recover for a debt not otherwise due.[2] As I have explained, the term sheet does not contain any provision allowing the bank to advance the due date for payment.

The majority also claims that "[b]ecause of Grant's breach, Washington Federal will receive nothing." The record contains no evidence of either Grant's current or future ability to pay. We would reverse a trial court that made this finding on summary judgment on our record.

The majority also boldly claims that a discount to present value has no application in this case. It reaches this conclusion because it cannot find any case applying the principle to breach of a contract with a liquidated sum. The majority apparently concedes that the right to receive unliquidated future damages is worth less than the right to receive the amount of those damages now. But the majority's conclusion necessarily assumes that the right to receive a liquidated sum in 60 months has the same value as the right to receive it now. This conclusion defies common sense and reality.

I cannot think of any reason for distinguishing unliquidated from liquidated sums in this context. A sum is unliquidated because a fact finder must exercise some discretion to determine its amount. But that fact finder must decide on a number that represents the amount of unliquidated future damages. Once this number has been determined, no meaningful distinction exists between liquidated and unliquidated future damages. Each represents a fixed amount intended to put the injured party in the same future position

---

[2] Llewellyn Iron Works v. Littlefield, 74 Wash. 86, 89-90, 132 P. 867 (1913); see also 27 MARJORIE C. ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES— DEBTORS' RELIEF § 3.4, at 140 (1998).

that party would have but for the injury. Reducing either to present value accounts for the time value of money. The time value of this amount of money is not affected by the method used by the fact finder to determine it. Thus, no logical reason appears to exist for the majority's distinction.

Because I agree that the trial court erred in awarding $850,000 in damages, I would remand for further proceedings consistent with this dissent.

_Leach_