2014 FEB 18 AM 9: 41



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| WASHINGTON FEDERAL, a federally chartered savings association, | No. 70004-9-I |
| Appellant, | DIVISION ONE |
| v. |  |
| KENDALL GENTRY and NANCY GENTRY, individually and the marital community comprised thereof, | PUBLISHED |
| Respondents. | FILED: February 18, 2014 |

Cox, J. — The Deeds of Trust Act generally prohibits an action for a deficiency judgment against a guarantor of a loan following a trustee's sale under a deed of trust securing that loan.[1] But exceptions to this general rule apply to a guarantor of certain commercial loans.[2]

In this action, Washington Federal seeks a deficiency judgment against Kendall Gentry and Nancy Gentry. They executed guaranties of payment for commercial loans to three borrowers that they control. Based on its reading of RCW 61.24.100, the trial court granted the Gentrys' motion for summary

---

[1] See RCW 61.24.100(1).

[2] Id.

judgment of dismissal of this action. Because the trial court erred both in its interpretation of this statute and its application of the statute to relevant loan documents, we reverse and remand for further proceedings.

Kendall Gentry owned and/or managed three entities: Blackburn Southeast LLC, Landed Gentry Development Inc., and Gentry Family Investments LLC.[3]

In 2005, Blackburn Southeast LLC obtained a commercial loan for $2,550,000 from Horizon Bank. This loan was evidenced by a promissory note that was secured by a May 1, 2006 deed of trust on property located on Little Mountain Road in Mount Vernon (the "Little Mountain Deed of Trust").

In April 2009, Landed Gentry Development Inc. obtained a commercial loan for $3,574,847.74 from Horizon Bank. This loan was evidenced by a promissory note that was also secured by the Little Mountain Deed of Trust and a May 1, 2006 deed of trust on property located on East Blackburn Road in Mount Vernon (the "Blackburn Road Deed of Trust").

In September 2009, Gentry Family Investments LLC obtained a commercial loan for $1,127,832.73 from Horizon Bank. This loan was evidenced by a promissory note that was also secured by the Little Mountain Deed of Trust.

---

[3] Brief of Appellant at 4; Clerk's Papers at 525 (listing Kendall Gentry as chairman of Landed Gentry Development, Inc.); Clerk's Papers at 530 (listing Kendall Gentry as manager of Gentry Family Investments LLC); Clerk's Papers at 534 (listing Kendall Gentry as manager of Gentry Family Investments LLC, member of Blackburn Southeast LLC).

In sum, the Little Mountain Deed of Trust secured all three commercial loans. The Blackburn Road Deed of Trust secured only the Landed Gentry Development Inc. commercial loan.

Kendall and Nancy Gentry each executed commercial guaranties of payment for all three loans.

In January 2010, the three notes matured. The three borrowers failed to pay these notes at maturity. Likewise, the Gentrys did not honor their guaranties.

Horizon Bank failed. In April 2010, the Federal Deposit Insurance Corporation, as receiver for Horizon, assigned that bank's interests in the three notes, the deeds of trust, and the guaranties to Washington Federal.

In April 2011, the trustees, under the deeds of trust then held by Washington Federal, conducted sales based on the defaults by the three borrowers. The bank was the successful bidder for both properties at these sales. The bank did not credit bid the full amount of the debt at these sales. Thus, a substantial deficiency allegedly remains.

In March 2012, the bank commenced this action against the Gentrys to enforce their guaranties and to obtain a deficiency judgment against them due to the shortfall arising from the trustees' sales.

The Gentrys moved for summary judgment. They argued that the Deeds of Trust Act prohibited the bank from seeking a deficiency judgment against them. The bank opposed the motion and also moved for summary judgment, arguing that it was entitled to a deficiency judgment against the Gentrys.

The trial court granted the Gentrys' motion for summary judgment, denied the bank's motion, and dismissed this action with prejudice.

The bank appeals.

## THE DEEDS OF TRUST ACT

The threshold issue is whether and how a beneficiary under a deed of trust who elects not to foreclose the deed of trust as a mortgage may obtain a deficiency judgment against guarantors under the Deeds of Trust Act.

This court reviews de novo summary judgment orders and engages in the same inquiry as the trial court.[4] Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law.[5]

Statutory construction is a question of law.[6] This court's objective is to determine the Legislature's intent.[7] "Where the language of a statute is clear, legislative intent is derived from the language of the statute alone."[8] "The 'plain meaning' of a statutory provision is to be discerned from the ordinary meaning of

---

[4] Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship, 158 Wn. App. 203, 215-16, 242 P.3d 1 (2010).

[5] CR 56(c).

[6] City of Spokane v. Rothwell, 166 Wn.2d 872, 876, 215 P.3d 162 (2009).

[7] Id.

[8] Id.

the language at issue, as well as from the context of the statute in which that provision is found, the related provisions, and the statutory scheme as a whole."[9]

RCW 61.24.100 addresses when actions for deficiency judgments may be brought when a deed of trust is not foreclosed as a mortgage.[10] A "deficiency judgment" exists where a money judgment for a debt exceeds the value of the security for that debt at the foreclosure sale.[11]

*History*

In 1965, the Legislature enacted the Deeds of Trust Act, which permitted nonjudicial foreclosure of deeds of trust when certain requirements were met.[12] Citing an early law review article by a well-recognized authority on the act, Division Three of this court observed that the Legislature designed this act "to avoid time-consuming judicial foreclosure proceedings and to save substantial time and money to both the buyer and the lender."[13] The act was designed to supplement the then existing foreclosure proceedings to better meet the needs of modern real estate financing.[14]

---

[9] Id. at 876-77 (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)).

[10] RCW 61.24.100(8).

[11] Boeing Emps.' Credit Union v. Burns, 167 Wn. App. 265, 282, 272 P.3d 908, review denied, 175 Wn.2d 1008 (2012).

[12] Laws of 1965, ch. 74.

[13] Peoples Nat. Bank of Wash. v. Ostrander, 6 Wn. App. 28, 31, 491 P.2d 1058 (1971) (citing John A. Gose, The Trust Deed Act in Washington, 41 WASH. L. REV. 94 (1966)).

[14] Id. (citing Gose, supra, at 96).

5

Our supreme court has explained that "[r]eading the entirety of [the act] in the context of the mortgage laws and the history of deed of trust legislation, it is apparent that there was contemplated a quid pro quo between lenders and borrowers."[15]

Specifically, borrowers relinquished the statutory right to redeem the property up to one year after a foreclosure sale.[16] The relinquishment of this right allowed lenders to obtain title to the property sold at a trustee's sale more quickly than in a judicial foreclosure.[17] Lenders were then able to sell the property and apply the sales proceeds to the debt.[18]

In exchange for this advantage, lenders relinquished the right to seek deficiency judgments following trustees' sales.[19] Thus, the real property security was the sole means for the lender to satisfy the debt.

Notwithstanding these provisions, the act expressly provided that lenders retained the right to foreclose deeds of trust as mortgages.[20] If lenders elected

---

[15] Donovick v. Seattle-First Nat'l Bank, 111 Wn.2d 413, 416, 757 P.2d 1378 (1988).

[16] Id. (citing former RCW 61.24.050 (1965)); see also former RCW 6.24.140 (1965).

[17] See Gose, supra, at 95-96; former RCW 6.24.220 (1965).

[18] See Gose, supra, at 95-96; former RCW 6.24.220 (1965).

[19] Donovick, 111 Wn.2d at 416 (citing former RCW 61.24.100 (1965)); see also Gose, supra, at 96.

[20] Gose, supra, at 96.

that option, the provisions of the act did not apply.[21]

The provision of the act governing deficiency judgments has been codified

at RCW 61.24.100 from the act's inception.[22] When first enacted in 1965, this

provision banned any deficiency judgment on the obligation secured by the

foreclosed deed of trust:

> Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and **no deficiency decree or other judgment shall thereafter be obtained on such obligation.**[23]

In 1990, the Legislature amended this provision by creating an exception

to the ban against any deficiency judgment on the obligation secured by the

foreclosed deed of trust. It did so by adding the following emphasized language

to the former version of the statute:

> Foreclosure, as in this chapter provided, shall satisfy the obligation secured by the deed of trust foreclosed, regardless of the sale price or fair value, and no deficiency decree or other judgment shall thereafter be obtained on such obligation, **except that if such obligation was not incurred primarily for personal, family, or household purposes, such foreclosure shall not preclude any judicial or nonjudicial foreclosure of any other deeds of trust, mortgages, security agreements, or other security interests or liens covering any real or personal property granted to secure such obligation.**[24]

In 1998, the Legislature again amended this provision. This time,

however, the revisions were more extensive. The Legislature rewrote the entire

---

[21] Id.

[22] Former RCW 61.24.100 (1965).

[23] Id. (emphasis added).

[24] Laws of 1990, ch. 111, § 2 (emphasis added).

statute, which was then codified into twelve subsections.[25] Presumably, these amendments were made to better meet the evolving needs of commercial borrowers and lenders in real estate financing.[26] As of this writing, there have been no further amendments to this portion of the act.[27]

In the current version of the act, the general bar against deficiency judgments remains.[28] But the Legislature created an exception for certain loans that it described as "commercial."[29] This term is a substitute for the former "obligation . . . not incurred primarily for personal, family, or household purposes."[30] That provision no longer appears in the act. Such "commercial loans" are limited to those executed after June 11, 1998, the effective date of the 1998 amendments to this section.[31]

This legislative history illustrates the evolution of this part of the act over time. Deficiency judgments for deeds of trust that are not foreclosed as mortgages have generally and consistently been prohibited since enactment of the act in 1965. The Legislature enacted limited exceptions to this prohibition in

---

[25] See Laws of 1998, ch. 295, § 12; RCW 61.24.100.

[26] See Gose, supra, at 94, 96.

[27] RCW 61.24.100.

[28] RCW 61.24.100(1).

[29] Id.

[30] Compare Laws of 1998, ch. 295, § 12, with Laws of 1990, ch. 111, § 2.

[31] Laws of 1998, ch. 295.

1990 and 1998. Among the limited exceptions enacted in 1998 are those applicable to guarantors of certain commercial loans.

*Current Statute*

RCW 61.24.100(1) states the current general rule regarding deficiency judgments following trustees' sales under deeds of trust. For these nonjudicial foreclosures, the rule states:

> ***Except to the extent permitted in this section for deeds of trust securing commercial loans***, a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against any borrower, grantor, or ***guarantor*** after a trustee's sale under that deed of trust.[32]

Further, RCW 61.24.100(3) states certain circumstances where deficiency judgments against borrowers, grantors, and guarantors are allowed:

> This chapter does not preclude any one or more of the following after a trustee's sale under a deed of trust securing a commercial loan executed after June 11, 1998:
>
> (a) [provision addressing "waste to the property," "wrongful retention of any rents, insurance proceeds, or condemnation awards," etc.]
>
> (b) [provision regarding foreclosures of other deeds of trust, etc.]
>
> (c) ***Subject to this section***, an action for a deficiency judgment against a guarantor if the guarantor is timely given the notices under RCW 61.24.042.[33]

Subsection (3)(c) addresses deficiency judgments against guarantors of certain commercial loans after trustees' sales under deeds of trust securing such loans. Significantly, the first clause of RCW 61.24.100(3)(c) states this provision

---

[32] (Emphasis added.)

[33] (Emphasis added.)

9

is "[s]ubject to this section." The word "subject" means that this provision is dependent or conditioned on "this section." The 1998 session laws make clear that "this section" means RCW 61.24.100 in its entirety.[34]

Additionally, the text that follows this first clause makes clear that a further requirement of this provision is that "notices under RCW 61.24.042" must be given to the guarantor of the loan.[35]

With this context in mind, we turn to the specific arguments before us. The bank argues that the trial court misinterpreted RCW 61.24.100(3)(c) when it "limit[ed] the scope of a deficiency judgment against a guarantor to waste and wrongful retention of rents."[36] We agree.

In the trial court's letter ruling, it stated in relevant part:

> RCW 61.24.100 clearly states deficiency judgments shall not be obtained against a guarantor when that guaranty is secured by a deed of trust which is nonjudicially foreclosed except for a few narrowly crafted exceptions.
>
> [The bank] argues that RCW 61.24.100(3)(c) creates an exception to seek unlimited deficiency judgments against any guarantor who is timely given notice under RCW 61.24.042 ([the Gentrys] received this notice). That interpretation requires the Court to ignore or give no meaning to the first four words of (3)(c) **"Subject to this section."**
>
> "This section" RCW 61.24.100 allows deficiency judgments: prior to a trustee's sale, in judicial foreclosures for obligations not secured by the same deed of trust, **limited to a decrease in the fair value of property by waste or the wrongful retention of various funds.**

---

[34] Laws of 1998, ch. 295, § 12.

[35] RCW 61.24.100(3)(c).

[36] Brief of Appellant at 15.

> I interpret section (3)(c) as meaning that a deficiency judgment, against a guarantor whose guaranty was secured by the nonjudicially foreclosed deed of trust, *can only be obtained for the decrease in fair value or wrongful retention, if the guarantor is given timely notice.*
>
> The answer to the second issue is "no." *[The bank] is only able to seek a deficiency judgment against [the Gentrys] for waste or wrongful retention.*[37]

The trial court properly concluded that RCW 61.24.100(1) generally bars deficiency judgments where deeds of trust are not foreclosed as mortgages, except for narrowly crafted exceptions. The court also properly rejected the bank's argument that RCW 61.24.100(3)(c) creates an unlimited exception that permits a lender to seek a deficiency judgment against a guarantor of certain commercial loans who is given timely statutory notices. As the trial court correctly stated, that would require rewriting the subsection to ignore its first clause: "Subject to this section."

But the trial court misread the scope of RCW 61.24.100(3)(c). Significantly, the words of the statute say "section," not "subsection." As we stated earlier in this opinion, the 1998 session laws make clear that "section" refers to RCW 61.24.100 in its entirety, not just subsections (3)(a) and (b). For this reason, the trial court misread the statute to limit an action against a guarantor for a deficiency judgment to "the decrease in fair value or wrongful retention [of rents, insurance proceeds, or condemnation awards], if the

---

[37] Clerk's Papers at 775 (emphasis added).

11

guarantor is given timely notice."[38]  These limitations are based on subsections

(3)(a) and (b) of the act.  Thus, we conclude that the clause, "subject to this

section," of RCW 61.24.100(3)(c) requires consideration of RCW 61.24.100 in its

entirety, not just the limitations of subsections (3)(a) and (b).

Given this conclusion, we must then consider the Gentrys' argument that

RCW 61.24.100(10) bars this action.  Subsection (10) states:

> A trustee's sale under a deed of trust securing a commercial loan
> does not preclude an action to collect or enforce any obligation of a
> borrower or guarantor if that obligation, or the substantial equivalent of
> that obligation, was not secured by the deed of trust.[39]

Specifically, the Gentrys contend that the "clear language" of this

subsection states that "obligations under a guaranty secured by a deed of trust

are *extinguished* by the nonjudicial foreclosure of that deed of trust."[40]  They

assert that "subsection (10) *prohibits* a deficiency against a guarantor where a

deed of trust secures it and has been foreclosed nonjudicially."[41]  We disagree.

We first note that the Gentrys use the word "extinguished."  Notably,

RCW 61.24.100(10) neither includes this word nor any synonym for it.  We will

not read this word into the statute.

Moreover, in our view, RCW 61.24.100(10) is not a prohibition.  All it says

is, "[a] trustee's sale under a deed of trust securing a commercial loan does not

---

[38] Id.

[39] RCW 61.24.100(10).

[40] Brief of Respondents Kendall and Nancy Gentry at 15 (emphasis added).

[41] Id. at 19.

preclude [an action for a deficiency judgment on a guaranty] if that obligation . . . was not secured by the deed of trust" that was foreclosed.

For example, we can envision a situation where the Gentrys executed another guaranty that had no relation to the commercial loans secured by any of the deeds of trust foreclosed by nonjudicial means here. In that case, the trustees' sales under these deeds of trust would have no effect on that other guaranty.

The problem with the Gentrys' interpretation is that it requires striking from the statute the word "not," as indicated by the following revision:

> A trustee's sale under a deed of trust securing a commercial loan does ~~not~~ preclude an action to collect or enforce any obligation of a borrower or guarantor if that obligation, or the substantial equivalent of that obligation, was ~~not~~ secured by the deed of trust.[42]

But the plain language of RCW 61.24.100(10) is permissive. That is, it states a permissive rule applicable to situations where the obligation of a borrower or guarantor is *not* secured by the deed of trust that was foreclosed by a trustee's sale. In that situation, the trustee's sale *does not* preclude the lender from bringing an action to collect on or enforce a guaranty. Only by striking the word "not" from the two places indicated above can the otherwise permissive statement of the statute be read as a prohibition.[43]

_____

[42] (Emphasis and alterations added).

[43] See, e.g., Glasebrook v. Mut. of Omaha Ins. Co., 100 Wn. App. 538, 545, 997 P.2d 981 (2000) ("Generally, we do not infer a prohibition absent specific language to that effect, unless the statute as a whole directs that conclusion.").

The Gentrys offer no explanation why we should rewrite the words of the statute under the guise of interpreting it to determine legislative intent. We decline either to omit language that is in the statute or add language that is not there.

Moreover, the Gentry's interpretation of RCW 61.24.100(10) is the inverse of what the plain language says. We also decline to add the inverse to the statute when the Legislature did not expressly do so.

In re Detention of Lewis contains an example of when the Legislature expressly codified the inverse.[44] There, the court stated:

> Pertinent here, the State need not plead a recent overt act in its petition where "it appears that ... [a] person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement." RCW 71.09.030(1). Conversely, the statute requires the State to allege a recent overt act where the offender is "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement." RCW 71.09.030(5). Similarly, at trial, the State must prove beyond a reasonable doubt that the offender committed a recent overt act "[i]f, on the date that the petition is filed, the person was living in the community after release from custody." Former RCW 71.09.060(1) (2001).[45]

As the supreme court recognized in the above passage, the Legislature first described a situation in which a recent overt act did not need to be pleaded.[46] But rather than expecting the reader to imply the truth of the inverse, the Legislature went on to make an explicit rule for the inverse. The statute

---

[44] 163 Wn.2d 188, 177 P.3d 708 (2008).

[45] Id. at 194 (alterations in original).

[46] Id.

explicitly defined both the situation in which a recent overt act does not need to be pleaded, and the situation in which a recent overt act does need to be pleaded.[47]

Here, in contrast, the plain language of RCW 61.24.100 does not contain an expression of the inverse. The Gentrys do not provide any argument why we should imply the inverse. Moreover, we do not feel it appropriate to imply the inverse under these circumstances.

Additionally, the Gentrys' interpretation of subsection (10) is grounded in a logical fallacy. "The proposition that 'A implies B' is not the equivalent of 'non-A implies non-B,' and neither proposition follows logically from the other."[48] State v. Holland illustrates the problem of implying the inverse of a statute.[49]

In Holland, the law at the time made it illegal for a pharmacist to sell grain alcohol.[50] A pharmacist could sell it for mechanical or chemical purposes, but had to get the purchaser to sign his name in a record book and to keep a "true and exact" record of such transactions.[51] Holland, a pharmacist, sold some grain alcohol to an informant.[52] The informant signed the record book, but he testified

---

[47] Id.

[48] Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 703 n.20 (2d Cir. 1980) (citing J. COOLEY, A PRIMER OF FORMAL LOGIC 7 (1942)).

[49] 99 Wash. 645, 649-51, 170 P. 332 (1918).

[50] Id. at 649.

[51] Id. at 649-50.

[52] Id. at 647.

that he told Holland he might be using it for purposes other than mechanical or chemical.[53] On the strength of that testimony, Holland was convicted.[54]

Holland argued on appeal that his good faith was established as a matter of law by the fact that the informant signed the record book.[55] The court was not persuaded.[56] "Appellant's argument overlooks the fact that the permission accorded to druggists . . . is to sell alcohol for mechanical or chemical purposes *only*. It is not a permission to sell to every person who signs a formal statement to that effect."[57]

The court then conducted a logical analysis of the statute and demonstrated that Holland's argument was based on a fallacy.[58] The first proposition, which is true, is that when the buyer does not sign the record book, the statute makes the seller guilty as a matter of law.[59] But Holland's second proposition is not true: when the buyer does sign the record book, he is not guilty as a matter of law.[60]

---

[53] Id.

[54] Id. at 648.

[55] Id. at 649-50.

[56] Id. at 650.

[57] Id.

[58] See id. at 651.

[59] Id.

[60] Id. at 649-51.

Indeed it seems to us that the issue of good faith not only does arise, but can only arise when a formally sufficient record of the sale has been made. Without such a record there is no issuable fact; the sale is conclusively illegal without regard to the seller's good or bad faith. **But the converse is not true.** When the formal record has been made, the question of good faith is an issue. That question is then one of fact for the jury upon the evidence.[61]

Putting aside terminology differences, like <u>Holland</u>, the Gentrys essentially argue that the inverse of what is stated in the statute is necessarily true. That is a logical fallacy. We cannot infer that the inverse of what the statute states is true. Based on these cases and our analysis of the statute before us, we reject the interpretation that the Gentrys assert.

In further support of their "clear language" argument, the Gentrys rely on <u>First-Citizens Bank & Trust Co. v. Cornerstone Homes & Development LLC</u>, a recent Division Two case.[62] We disagree with the reasoning and conclusion in that case.

There, a bank sued the guarantors of three commercial loans to Cornerstone Homes & Development, LLC for a deficiency judgment following nonjudicial foreclosures of the deeds of trust securing the loans.[63] The superior court entered judgment on the pleadings, ordering the guarantors to pay the deficiency.[64] Division Two reversed.[65]

---

[61] <u>Id.</u> at 651 (emphasis added).

[62] __ Wn. App. __ , 314 P.3d 420 (2013).

[63] <u>Id.</u> at 421-22.

[64] <u>Id.</u> at 422.

[65] <u>Id.</u> at 421.

17

One of the issues before the court was whether RCW 61.24.100(10) created an exception to the general prohibition in RCW 61.24.100(1) against deficiency judgments following a trustee's sale under a deed of trust securing certain commercial loans.[66] The court held that subsection (10) created such an exception.[67] In doing so, the court quoted, in part, the subsection, emphasizing in its opinion the last words of the following quotation:

> A trustee's sale under a deed of trust securing a commercial loan does not preclude an action to . . . enforce any obligation of a . . . guarantor if that obligation . . . *was not secured by the deed of trust*.[68]

The court then went on to apply the statutory construction principle *expressio unius est exclusio alterius*.[69] Doing so, the court concluded that the language of subsection (10):

> *[I]mplies* that (1) this express exception to the anti-deficiency judgment statute is the *only* exception under these circumstances; and (2) therefore, further *implies* that where a guaranty *was* secured by the foreclosed deed of trust (which also secured a commercial loan), the lending bank *cannot* sue the guarantor for any deficiency remaining after the trustee's sale of the secured property.[70]

First, Division Two utilized a principle of construction that we believe does not control this case. The court concluded that subsection (10) is the "*only*

---

[66] Id. at 424.

[67] Id.

[68] Id.

[69] Id. at 424-25.

[70] Id. at 425 (some emphasis added).

exception under these circumstances."[71] But subsection (10) is not the *only* exception in RCW 61.24.100. This interpretation ignores other subsections within the statute, particularly subsection (3)(c), which is at issue in this case.

Second, we note that Division Two did not expressly address in its analysis what we pointed out earlier in this opinion. The argument that subsection (10) prohibits a deficiency judgment against guarantors requires the following reading of the statute:

> A trustee's sale under a deed of trust securing a commercial loan does ~~not~~ preclude an action to collect or enforce any obligation of a borrower or guarantor if that obligation, or the substantial equivalent of that obligation, was ~~not~~ secured by the deed of trust.[72]

We will not read out the word "not" from this provision. But we believe Division Two's reading implicitly does so. Moreover, as we explained earlier in this opinion, that court's reading of subsection (10) implies the inverse of the provision that is not true. We decline to do the same.

For these reasons, we are not persuaded that First-Citizens properly interprets the statute. Accordingly, we reject its reasoning and conclusion that RCW 61.24.100(10) bars an action where a guaranty is secured by the deed of trust foreclosed by a prior trustee's sale.

Finally, during oral argument and by additional authority, the Gentrys argue that the word "if" in this statute should be construed to mean "only if." Like Division Two, they cite the construction principle, *expressio unius est exclusio*

---

[71] Id.

[72] RCW 61.24.100(10) (emphasis and alterations added).

19

*alterius*, which means the "'[e]xpression of one thing in a statute implies exclusion of others, and this exclusion is presumed to be deliberate.'"[73]

As we previously explained in this opinion, the essence of the Gentrys' argument requires that we read RCW 61.24.100(10) to say more than it actually says. This argument is that the bank may bring this action to enforce the Gentrys' guaranties *only if* the guaranties were not secured by the nonjudicially foreclosed deeds of the trust securing the commercial loans. Notably, the statute says "if," not "only if." We decline to rewrite the statute by adding the word "only" into the analysis in order to conclude that the "if" clause is an indispensable condition precedent to bringing this action.

Also, it appears that the Gentrys argue that "only" should be written into the statute because subsection (10) is the "'only exception under these circumstances.'"[74] They again cite First-Citizens Bank to support this assertion.[75] But, as we just discussed, subsection (10) is not the only exception in RCW 61.24.100.

To summarize, we conclude that RCW 61.24.100(10) does not preclude this action for a deficiency judgment against the guarantors of these commercial loans. The trustees' sales under the deed of trust securing these loans do not

---

[73] First-Citizens Bank, 314 P.3d at 425 n.15 (quoting State v. Kelley, 168 Wn.2d 72, 83, 226 P.3d 773 (2010)).

[74] Respondents' Citation of Additional Authority at 1 (quoting First-Citizens Bank, 314 P.3d at 425).

[75] Id. (citing First-Citizens Bank, 314 P.3d at 425).

bar this action. Moreover, this action is not barred by the limitations stated in RCW 61.24.100(3)(a) and (b). The trial court erred by deciding otherwise.

## THE LOAN DOCUMENTS

Based on the incorrect premise that RCW 61.24.100(10) should be interpreted as they argue, the Gentrys further argue that their guaranties are secured by the various deeds of trust securing the loan. Accordingly, they claim that the trustees' sales under these deeds of trust bar this action for a deficiency judgment. Even if we agreed with their premise, we would still disagree with their conclusion. We hold that these deeds of trust do not secure the Gentrys' guaranties.

This court reviews de novo a trial court's interpretation of the language of a contract.[76] "When interpreting a contract our primary goal is to discern the intent of the parties, and such intent must be discovered from viewing the contract as a whole."[77]

Washington follows the "objective manifestation theory of contracts" to determine the parties' intent.[78] Courts focus on the "objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties."[79]

---

[76] Knipschield v. C-J Recreation, Inc., 74 Wn. App. 212, 215, 872 P.2d 1102 (1994).

[77] Weyerhaeuser Co v. Commercial Union Ins. Co., 142 Wn.2d 654, 669, 15 P.3d 115 (2000).

[78] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[79] Id.

"[W]hen interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used."[80] This court does not "interpret what was intended to be written but what was written."[81]

Here, the deeds of trust at issue use identical language for the relevant provisions.[82] The first page of each deed of trust identifies the grantors under the instruments. For the Little Mountain Deed of Trust, the "Grantor" is Little Mountain East LLC.[83] For the Blackburn Road Deed of Trust, the "Grantors" are Blackburn Southeast LLC, Blackburn North LLC, and Little Mountain East LLC.[84] Horizon Bank, the predecessor in interest to Washington Federal, is identified as the "Grantee" or Beneficiary/Lender.[85] The Gentrys are not parties to these deeds of trust.

At page two of each of the deeds of trust, the Grantors state what is secured:

> THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF
> RENTS AND THE SECURITY INTEREST IN THE RENTS AND
> PERSONAL PROPERTY, IS GIVEN TO SECURE (A) **PAYMENT**
> OF THE INDEBTEDNESS AND (B) **PERFORMANCE** OF ANY
> AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED
> DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF

---

[80] Id. at 503-04.

[81] Id. at 504.

[82] Compare Clerk's Papers at 9-17, with Clerk's Papers at 23-31.

[83] Id. at 23.

[84] Id. at 9.

[85] Id. at 9, 23.

TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:[86]

Three paragraphs later, the Grantors state whose payment and performance obligations are secured by the deeds of trust:

> *PAYMENT AND PERFORMANCE.* Except as otherwise provided in this Deed of trust, *Borrower and Grantor* shall pay to Lender all indebtedness secured by this Deed of Trust as it becomes due, and *Borrower and Grantor* shall strictly perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.[87]

Reading these two paragraphs together, the deeds of trust must be read as securing the payment and performance obligations of the *Borrowers and Grantors*.[88] Here, *Borrower* and *Grantor* is the same entity for each loan secured by each deed of trust. There simply is no way to read these provisions so that any deed of trust secures the payment and performance obligations of anyone other than the *Borrower and Grantor*. The guarantors of the loans are neither. Thus, none of these deeds of trust secure the guaranties of the Gentrys.

Later in each deed of trust, another provision discusses full performance of the secured obligations:

> *FULL PERFORMANCE.* If *Borrower and Grantor* pay all the Indebtedness when due, and *Grantor* otherwise performs all the obligations imposed upon *Grantor* under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of

---

[86] Id. at 11, 25 (emphasis added).

[87] Id. (second and third emphasis added).

[88] See Brief of Appellant at 25-26; Brief of Amici Curiae Washington Bankers Association and Union Bank, N.A. at 12-15.

termination of any financing statement on the evidencing Lender's security interest in the Rents and the Personal Property.[89]

This language reinforces our conclusion. The exclusive focus is on the payment and performance obligations of the **Borrower and Grantor** of the deed of trust. There is simply no mention of such obligations of the guarantors.

In sum, we conclude when we read each of these deeds of trust as a whole, none secures the Gentrys' guaranties. Accordingly, the Gentrys' argument that RCW 61.24.100(10) bars this action against them is wholly unpersuasive for a second reason.

In support of their argument that the guaranties are secured by various deeds of trust, the Gentrys again rely on First-Citizens Bank, the recent Division Two case we previously discussed in this opinion.[90] They represent that the form of the deed of trust in that case is the same as those here. But the complete deeds of trust at issue in that case are not in this record on appeal. Consequently, we will not speculate on whether the representation is correct.

Nevertheless, we take this opportunity to address arguments made here that were also clearly before that court.

In First-Citizens Bank, Division Two focused on different provisions in the deeds of trust before that court than those we just discussed. Specifically, the court quoted the following language:

GIVEN TO SECURE (A) PAYMENT OF THE **INDEBTEDNESS** AND (B) PERFORMANCE OF **ANY AND ALL OBLIGATIONS**

---

[89] Clerk's Papers at 14, 28 (second and third emphasis added).

[90] 314 P.3d at 420.

24

*UNDER* THE NOTE, *THE RELATED DOCUMENTS*, AND [THE] DEED[S] OF TRUST.[91]

Division Two concluded that this language included any guaranties of the loans secured by the deeds of trust in that case.[92] In so concluding, Division Two looked to the definition of the term "Related Documents" in the deeds of trust, which included any "'*guaranties* . . . whether *now* or hereafter *existing*, executed in connection with indebtedness.'"[93] As Division Two noted, this definition plainly includes "guaranties."[94]

The Gentrys make a similar argument here. They point to substantially similar language in these deeds of trust that contain the term "Related Documents" together with a similar definition.[95]

But reading this definition to include *all* guaranties, regardless of who the guarantor is, ignores the specifications in the "Payment and Performance" provisions for the deeds of trust that are before us. As we discussed previously in this opinion, this latter provision makes clear whose obligations for payment

---

[91] See First-Citizens Bank, 314 P.3d at 423 (alteration in original).

[92] Id.

[93] Id.

[94] First-Citizens Bank, 314 P.3d at 423.

[95] See Clerk's Papers at 17, 31 ("The words '*Related Documents*' *mean all* promissory notes, credit agreements, loan agreements, *guaranties*, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, *whether now or hereafter existing, executed in connection with the indebtedness*; provided, that the environmental indemnity agreements are not 'Related Documents' and are not secured by this Deed of Trust.") (emphasis added).

and performance are secured by the deeds of trust. And there can be no doubt that such obligations are limited to the ***Borrower and Grantor*** of each instrument, not guarantors of the loan. Accordingly, the scope of the definition of "Related Document" does not include the guaranties of the Gentrys.

To the extent that First-Citizens holds otherwise, we disagree with its conclusion. That case does not control here.

We note that the trial court in this case reached a conclusion similar to that in First-Citizens. It concluded that "the guaranties executed by the Defendants were related documents."[96] It reached this conclusion by construing the deeds of trust instrument against the bank, the drafter:

> Without repeating your respective positions, I find that the general principle of ambiguities being [construed] against the drafting party is the decisive factor. . . . The inconsistencies favor the Defendants and result in the conclusion that the guaranties were related documents and therefore secured by the foreclosed deeds of trust.[97]

Construing the deeds of trust instruments against the drafter was also a rationale that Division Two pointed to in a footnote.[98]

The problem with this approach is that this principle applies only where an instrument is ambiguous.[99] As we discussed previously in this opinion, the deeds of trust in this case are not ambiguous when read as a whole. The Grantor under

---

[96] Clerk's Papers at 774-75.

[97] Id.

[98] First-Citizens Bank, 314 P.3d at 423 n.8.

[99] See, e.g., Rouse v. Glascam Builders, Inc., 101 Wn.2d 127, 135, 677 P.2d 125 (1984).

each instrument expressly stated that the deed of trust secured the obligations of the *Borrower and Grantor*. Each of these was the same entity for each loan. And none of these entities included the Gentrys, the guarantors of the loan obligations. Thus, this principle of interpretation does not apply in this case.

Because of our resolution of the two issues in this opinion, we need not reach the third question: whether the waiver of anti-deficiency defenses language in the guaranties of payment is enforceable against the Gentrys. In order to make clear that the trial court's decision on this question is not binding on these parties, we vacate that portion of that court's decision.

There is an outstanding issue that is not presently before us. The Gentrys are entitled to a fair value hearing under RCW 61.24.100(5). That hearing has not yet occurred because the trial court decided this matter on summary judgment. Thus, remand for such a hearing is required.

## ATTORNEY FEES

The Gentrys seek an award of attorney fees based on the contract provision in their guaranties. The bank reserves the right to seek fees under the same provision following remand and further proceedings. We deny an award of fees at this time to any party because doing so is premature.

Each of the guaranties in this case provides for payment of reasonable attorney fees to the bank in connection with enforcement of the guaranties.[100] RCW 4.84.330 makes this unilateral contractual provision bilateral, and further

---

[100] See Clerk's Papers at 119, 122, 125, 128, 131, 134.

27

provides that the "prevailing party" is entitled to such an award. A prevailing party is one in whose favor a final judgment is rendered.[101]

Moreover, a trial court may include appellate attorney fees after remand.[102]

Because a prevailing party has not yet been determined and will not be determined until after a fair value hearing under RCW 61.24.100(5) on remand, we decline to award fees now. That determination may be made by the trial court at such time as it makes an award of reasonable attorney fees.

We reverse and remand for further proceedings. We also vacate that portion of the trial court's decision concerning the enforceability of waiver of anti-deficiency defenses. We also deny an award of attorney fees as premature.

_____ Cox, J.


WE CONCUR:

_____          _____
Becker, J.

---

[101] Riss v. Angel, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

[102] See Stieneke v. Russi, 145 Wn. App. 544, 572, 190 P.3d 60 (2008) ("Because we remand this case, neither party is entitled to attorney fees. If the trial court finds that the Stienekes met the required standard of proof, it should award attorney fees for this appeal as well.").