IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| JONATHAN WESLEY EBBELER AND ELIZABETH ASHLEY EBBELER, husband and wife,<br><br>     Appellants,<br><br>  v.<br><br>WFG NATIONAL TITLE COMPANY OF WASHINGTON, LLC, a Washington limited liability company; DANI LEGGETT and JANE/JOHN DOE LEGGETT, believed to be married persons,<br><br>     Respondents. | No. 84849-6-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION IN PART, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |

The appellants, Jonathan and Elizabeth Ashley Ebbeler, have filed a motion for reconsideration of the opinion filed on February 20, 2024. The court has determined that said motion should be granted and that the opinion filed on February 20, 2024, shall be withdrawn and a substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted; it is further

ORDERED that the opinion filed on February 20, 2024, is withdrawn and a substitute unpublished opinion shall be filed.

_Feldman, J._

_Bremer, J_

_Smith, C.J._

FILED
3/25/2024
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| JONATHAN WESLEY EBBELER AND ELIZABETH ASHLEY EBBELER, husband and wife,<br><br>     Appellants,<br><br>  v.<br><br>WFG NATIONAL TITLE COMPANY OF WASHINGTON, LLC, a Washington limited liability company; DANI LEGGETT and JANE/JOHN DOE LEGGETT, believed to be married persons,<br><br>     Respondents. | No. 84849-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Jonathan and Elizabeth Ebbeler (the Ebbelers) appeal the trial court's summary judgment order dismissing their claims against WFG National Title Company of Washington, LLC (WFG), and its Limited Practice Officer, Dani Leggett (collectively, the Escrow Defendants), based on issue preclusion principles.[1] We reverse.

---

[1] Although Washington courts and litigants often refer to this doctrine as "collateral estoppel," it is "modernly referred to as issue preclusion." *Scholz v. Wash. State Patrol*, 3 Wn. App. 2d 584, 594, 416 P.3d 1261 (2018). The U.S. Supreme Court has noted that the modern terminology has "replaced" the prior terminology, which it described as "a more confusing lexicon." *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5, 128 S. Ct. 2161 (2008).

**I**

This appeal arises out of the Ebbelers' failed attempt to purchase a home in Shoreline, Washington. The home was previously owned by Alison Andrews, who died in February 2018. Andrews' son, Sidney Andrews, acting as the personal representative of her estate (the Estate), listed the home for sale. The Ebbelers attempted to purchase the home from the Estate, but the transaction failed to close. The Ebbelers sued the Estate and lost. That was the Ebbelers' first lawsuit relating to the property and is referred to herein as *Ebbeler I.*

On appeal in the first lawsuit, our court summarized the failed attempt to purchase the property, starting with the negotiations on price, as follows:

> On March 28, 2019, the Ebbelers offered to purchase the property for $2 million, using the Northwest Multiple Listing Service (NWMLS) real estate purchase and sale agreement form (REPSA). On March 30, Andrews extended a counteroffer for $2.625 million, offered a personal representative's deed in lieu of a statutory warranty deed, and required that any and all contingencies, both financing and inspections, be waived within 30 days of mutual acceptance. . . .

> On March 31, 2019, the parties settled on a purchase price of $2.3 million. The REPSA contained the Estate's proposed 30-day contingency period clause:

>> Buyer shall have 30 days from mutual acceptance to conduct all inspections, document reviews, financing approval, etc. . . . After 30 days, Buyer and Seller agree that all contingencies are deemed to be waived and will proceed to closing as specified in the agreement. Buyer may elect, before the 30 days has expired, to terminate the agreement with written notice and Earnest Money will be refunded to the Buyer.

>> Upon removal of Buyer's contingencies or after thirty (30) days from mutual acceptance and delivery of the Residential Real Estate Purchase and Sale Agreement, whichever is sooner, the Earnest Money shall become a non-refundable deposit applicable toward the Purchase Price and no longer Earnest Money. If this transaction fails to close for any reason

other than default by Seller, the non-refundable deposit shall remain the property of Seller.

The parties agreed on a closing date of "on or before" May 29, 2019. They also agreed to use WFG National Title (WFG) as the closing agent. Once they agreed to these final terms, the Ebbelers deposited $65,000 in earnest money with WFG.

. . . .

The Ebbelers allowed the contingency period to lapse and all contingencies were, at that point, waived. . . .

The Ebbelers, residents of Maryland, worked with a mortgage broker to obtain a $1.6 million loan from Washington Federal (WaFed) to purchase the property. WaFed prepared loan documents and forwarded them to WFG for the Ebbelers to execute. WFG arranged for a traveling notary to meet the Ebbelers to execute the loan and closing papers on Saturday, May 25, 2019, four days before the scheduled closing date.

WFG mistakenly provided the Ebbelers with a draft statutory warranty deed, rather than a personal representative's deed, to approve. The Ebbelers approved the deed form, signed what they believed to be all remaining documents, and returned them via overnight mail to WFG.

WFG received the Ebbelers' signed closing documents on the morning of May 28 and forwarded them to WaFed to review. The same day, the Ebbelers wired a $690,000 down payment to WFG.

Just before 6 p.m. that evening, Dani Leggett, the closing agent, emailed Andrews and asked him to arrive at WFG's Seattle offices at 11 a.m. the next day to sign closing documents so she could "send documents to the lender prior to their funding cutoff." Leggett informed Andrews that "[t]he buyer's lender requires reviewing a portion of the seller signed documents prior to funding their loan and releasing us to record." The following morning, Andrews told Leggett that he would come in to execute the closing documents but that she did not have the authority to distribute any documents to the Ebbelers' lender until he provided written authorization for her to close.

At approximately 11 a.m. on May 29, WaFed notified WFG that it had discovered at least 13 errors in the Ebbelers' signed loan documents that needed to be corrected before it would wire funds for closing.

- 3 -

At 1 p.m., [the attorney for the Estate, Lisa] Peterson notified Leggett that the Estate would not authorize her to send copies of signed documents to anyone unless and until all funds had been deposited. Leggett responded that the only documents she wanted to send were the signed escrow instructions, the "closing disclosure," and the statutory warranty deed. When Peterson received this email, she told Leggett that the proper deed form should be a personal representative's deed, not a statutory warranty deed, and that she would not authorize WFG to distribute a signed deed before funds were on hand to close. She also informed Leggett that Andrews would be there by 2:30 p.m. to sign the closing documents.

Leggett then sent an email notifying everyone involved in the transaction that once Andrews arrived to sign the documents and she had the "green light" to move forward with the closing, she would let everyone know. She further stated that it was her belief that the lender's cutoff to fund the loan was 2 p.m. and suggested that the parties would need to extend the REPSA. At 1:40 p.m., the Ebbelers' mortgage broker, Phil Mazzaferro, sent an email to the parties indicating that WaFed wanted more changes to the loan documents. Barbara Otero, WaFed's loan manager, testified that the bank could not and would not fund the loan until these items were corrected.

Nothing in the record indicates if or when the errors in the Ebbelers' loan documents were corrected. Neither WaFed nor the Ebbelers ever deposited the balance of the purchase price with WFG.

Andrews arrived at WFG's offices at 2:17 p.m. and learned that WFG had prepared, and the Ebbelers had approved, the incorrect deed form. He immediately notified his attorney of the error and she sent WFG a personal representative's deed for WFG to finalize. WFG asked its lawyer to approve the revised deed. Andrews signed all the closing documents, except the deed, by 2:48 p.m. He signed the correct deed form at 3:51 p.m. Because the King County Recorder's Office closes at 3:30 p.m., WFG would have been unable to record the deed that day.

When the Ebbelers realized the transaction would not close, they asked Andrews to extend the closing date. Andrews refused because the Ebbelers had failed to tender the purchase proceeds.

*Ebbeler v. Andrews*, No. 82225-0-I, slip op. at 3-7 (Wash. Ct. App. Feb. 28, 2022)

(unpublished), https://www.courts.wa.gov/opinions/pdf/822250.pdf (footnotes

omitted).

In *Ebbeler I*, the Ebbelers sued the Estate for recovery of the earnest money, claiming the Estate (1) breached the REPSA by failing to execute and deliver a deed in a timely manner and (2) breached its duty of good faith and fair dealing by preventing the Ebbelers from funding the loan. *Id.* at 7. The Estate filed a counterclaim alleging the Ebbelers had breached the REPSA. *Id.* Following a bench trial, the trial court found that the Ebbelers had breached the REPSA by failing to timely pay the purchase price by the closing date and therefore had forfeited the earnest money. *Id.* at 7-8. Critical here, the trial court's findings of fact and conclusions of law indicates as follows: (1) "[t]he Ebbeler's [sic] failure to perform caused the closing to fail"; and (2) "responsibility [for timely payment at closing] lay entirely with the Ebbelers and it is the ultimate failure for this purchase not happening."[2] On appeal, we affirmed the trial court's ruling in all respects, and the Supreme Court denied review. *Id.* at 1; *Ebbeler v. Andrews*, 199 Wn.2d 1024, 512 P.3d 901 (2022).

After the judgment in *Ebbeler I* became final, the Ebbelers filed the instant action against the Escrow Defendants, which is referred to herein as *Ebbeler II*. The Ebbelers asserted four claims: (1) breach of contract; (2) professional negligence; (3) tortious interference with contract; and (4) violation of the Washington Consumer Protection Act, RCW 19.86 (the CPA). Whereas the contract at issue for purposes of the tortious interference claim is the REPSA

---

[2] We refer to these statements as "findings" even though the first appears in the trial court's conclusions of law (in what is incorrectly numbered paragraph 98) and the second in the trial court's "order of the court" (in paragraph 7). Whether the statements are properly characterized as findings, conclusions, or a judicial decree is not material to our analysis.

between the Ebbelers and the Estate, the contract at issue for purposes of the breach of contract claim is the Closing Agreement and Escrow Instructions (the Escrow Instructions) between and among the Ebbelers and the Escrow Defendant.

Relevant here, the Escrow Instructions include the following provisions:

**Documents.** The closing agent is instructed to select, prepare, complete, correct, receive, hold, record and deliver documents as necessary to close the transaction.

. . . .

**Instructions from Third Parties.** If any written instructions necessary to close the transaction according to the parties' agreement are given to the closing agent by anyone other than the parties or their attorney, including but not limited to, lenders, such instructions shall be deemed to have been accepted and agreed to by the parties.

**Disclosure of Information to Third Parties.** The closing agent is authorized to furnish, upon request, copies of any closing documents, agreements or instructions concerning the transaction to the parties' attorneys and to any real estate agent, lender or title insurance company involved in the transaction.

. . . .

**Inability to Comply With Instructions.** If the closing agent receives conflicting instructions or determines, for any reason, that it cannot comply with these instructions by the date for closing specified in the parties' agreement or in any written extension of that date, it shall notify the parties, request further instructions, and in its discretion: (1) continue to perform its duties and close the transaction as soon as possible after receiving further instructions, or (2) if no conflicting instructions have been received, return any money or documents then held by it to the parties that deposited the same, less any fees and expenses chargeable to such party, or (3) commence a court action, deposit the money and documents held by it into the registry of the court, and ask the court to determine the rights of the parties.

At bottom, the Ebbelers claim that the Escrow Defendants breached these specific contractual requirements and that their breach of contract, as well as their tortious conduct, ultimately caused the closing to fail.

Because the trial court in *Ebbeler I* expressly found that "[t]he Ebbeler's [sic] failure to perform caused the closing to fail," the Escrow Defendants filed a motion for summary judgment to dismiss the Ebbelers' claims, arguing that the claims are barred by issue preclusion because each claim "possesses a causation element that has already been judicially determined" in *Ebbeler I*. The trial court granted the motion and dismissed the Ebbelers' claims. Its order explains: "the issue of causation in this case is collaterally estopped based on the Findings of Fact and Conclusion of Law issued in [*Ebbeler I*]." The trial court then awarded attorney fees and costs to the Escrow Defendants. The Ebbelers appeal.

## II

The principal issue before us is whether the trial court erred in dismissing the Ebbelers' claims on summary judgment on the basis of issue preclusion. "Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Weaver v. City of Everett*, 194 Wn.2d 464, 472, 450 P.3d 177 (2019) (citing CR 56(c)). "We review summary judgment orders de novo, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.* We likewise review a trial court's application of issue preclusion de novo. *Id.* at 473.

Issue preclusion is an equitable doctrine that "bars relitigation of particular *issues* decided in a prior proceeding." *Id.* The party asserting issue preclusion must establish four elements: "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom [issue preclusion] is asserted was a party to, or in privity with a party to, the earlier proceeding; and

(4) application of [issue preclusion] does not work an injustice on the party against whom it is applied." *Id.* at 474. The Ebbelers assert that elements (1) and (4) have not been satisfied and that the decisive causation issue was not actually decided in *Ebbeler I*. We agree.

The first requirement to apply issue preclusion—identicality—limits issue preclusion to "situations where the issue presented in the second proceeding is *identical in all respects* to an issue decided in the prior proceeding, and where the controlling facts and applicable legal rules remain unchanged." *Lemond v. Dep't of Licensing*, 143 Wn. App. 797, 805, 180 P.3d 829 (2008) (quoting *Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974)). Courts only extend issue preclusion to "'ultimate facts,' *i.e.*, those facts directly at issue in the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim." *McDaniels v. Carlson*, 108 Wn.2d 299, 305-06, 738 P.2d 254 (1987) (quoting Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805, 833 (1985)); *see also State v. Eggleston*, 164 Wn.2d 61, 74, 187 P.3d 233 (2008) ("An 'ultimate fact' is a fact 'essential to the claim or the defense.'" (quoting BLACK'S LAW DICTIONARY 629 (8th ed. 2004)). The identicality requirement is not satisfied "[w]here an issue arises in two entirely different contexts." *McDaniels*, 108 Wn.2d at 305. Additionally, "[a]n important clarification of the first requirement that an issue was 'decided' in the earlier proceeding is that the issue must have been 'actually litigated and necessarily determined' in that proceeding." *Scholz v. Wash. State Patrol*, 3 Wn. App. 2d 584, 595, 416 P.3d 1261 (2018) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 508, 745 P.2d 858 (1987)).

Applying these legal principles here, the identicality requirement is not satisfied. The Escrow Defendants' causal responsibility for the failed transaction was not actually litigated and necessarily decided in *Ebbeler I* because the causation issue in *Ebbeler I* arose in a different context. The sole issue in *Ebbeler I* was whether the Ebbelers or the Estate breached their duties under the REPSA, and the trial court concluded—in the context of that dispute—the Ebbelers breached. In contrast, the issues raised in *Ebbeler II* concern whether the Escrow Defendants' breach of their separate contractual and tort duties caused the Ebbelers to breach the REPSA and, as a result, forfeit their earnest money and lose the opportunity to purchase the home. Addressing that issue, the Ebbelers allege the Escrow Defendants breached the Escrow Instructions by (1) failing to correct the errors in WaFed's loan documents, (2) failing to provide the correct deed form to the Ebbelers and the Estate before WaFed's wiring cutoff at 2 p.m. on the closing date, (3) erroneously informing Andrews that he could sign the closing documents after WaFed's wiring cutoff, (4) failing to notify the Ebbelers that the Estate had given conflicting instructions to WFG to withhold the Estate's signed closing documents from WaFed until further authorization from the Estate, and (5) failing to provide the Estate's signed closing documents to WaFed notwithstanding the Estate's instructions. The Ebbelers further allege that the Escrow Defendants breached their duty to provide reasonably prudent escrow services, tortiously interfered with the contractual relationship between the Ebbelers and the Estate, and violated the CPA. None of these issues was decided by the trial court in *Ebbeler I* because it was limited to resolving the dispute between the Ebbelers and

the Estate. Therefore, the issues presented in *Ebbeler II* are not identical to those decided in *Ebbeler I*.

Moreover, even if the identicality requirement were satisfied here, the fourth element—"application of [issue preclusion] does not work an injustice on the party against whom it is applied" (*Weaver*, 194 Wn.2d at 474 (quoting Christiansen v. Grant County Hospital Dist. No. 1, 152 Wn.2d 299, 307, 96 P.3d 957 (2004))—also has not been satisfied. In determining whether applying issue preclusion will work an injustice on the party against whom it is applied, "Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue." *State Farm Fire & Cas. Co. v. Ford Motor Co.*, 186 Wn. App. 715, 725, 346 P.3d 771 (2015) (quoting *Hadley v. Maxwell*, 144 Wn.2d 306, 311, 27 P.3d 600 (2001)). While the purposes of issue preclusion are "to promote judicial economy by avoiding relitigation of the same issue, to afford the parties the assurance of finality of judicial determinations, and to prevent harassment of and inconvenience to litigants," these purposes must be "balanced against the important competing interest of not depriving a litigant of the opportunity to adequately argue the case in court." *Lemond*, 143 Wn. App. at 804.

Applying issue preclusion here would work an injustice against the Ebbelers because it would deprive them of their opportunity to obtain relief against the Escrow Defendants. Moreover, declining to apply issue preclusion would not prejudice the Escrow Defendants because, as nonparties to *Ebbeler I*, they did not face liability from or expend substantial resources in defending against the prior litigation between the Ebbelers and the Estate. Instead, in that case the Ebbelers primarily litigated whether their own actions or those of the Estate prevented the

transaction from closing. Because the Ebbelers have not yet had a full and fair hearing to adjudicate their claims against the Escrow Defendants, it would be unjust to apply issue preclusion in this case.

Indeed, the potential for injustice is heightened in this case because the trial court in *Ebbeler I,* to the extent it addressed the Escrow Defendants' causal responsibility for the failure of the transaction, indicated that the Ebbelers' claims against the Escrow Defendants may be meritorious. The court found that the "administrative work" in completing WaFed's loan documents that WFG arranged for the Ebbelers to sign "appears to have directly impacted the loan being funded," although the court did not specify who was responsible for completing this administrative work. The purportedly corrected loan documents that WFG sent to WaFed still contained multiple errors and may have been sent after the closing deadline. And Leggett apparently did not know that WaFed had a 2 p.m. cutoff to wire the loan proceeds to WFG, nor did Leggett communicate this deadline to Andrews when scheduling his signing appointment. These findings seemingly point the finger at the Escrow Defendants for causing the Ebbelers to fail to secure funding from WaFed by the closing date and ultimately breach the REPSA.

Likewise, the trial court in the instant case recognized that "it's clear that the [Ebbelers] and the [Escrow Defendants] had entered into a contract where WFG had certain duties" and that "[i]t's also clear from the record that WFG breached some of those duties." The court further noted that the *Ebbeler I* trial court's finding that the Ebbelers were ultimately at fault for the failure of the transaction "seems to acknowledge impliedly that there was fault on behalf of others, including WFG, that were involved in this transaction." In fact, Leggett testified in her deposition

- 11 -

during discovery in *Ebbeler II* that "there was nothing that [the Ebbelers] could have done differently to make the transaction go through." Thus, rather than foreclose claims against the Escrow Defendants, the findings from *Ebbeler I* instead open the door to a finding in *Ebbeler II* that the Escrow Defendants caused the Ebbelers to breach the REPSA and incur damages. On this record, applying issue preclusion would be unjust.

The Escrow Defendants' contrary arguments are unpersuasive. They rely heavily on the discrete findings in *Ebbeler I* without properly considering the context in which those findings were made. While the trial court in *Ebbeler I* found that "[t]he Ebbeler's [sic] failure to perform caused the closing to fail" and responsibility to supply the funds at closing to complete the sale "lay entirely with the Ebbelers and it is the ultimate failure for this purchase not happening," the identicality element is not satisfied where, as here, "an issue arises in two entirely different contexts." *McDaniels*, 108 Wn.2d at 305. The *Ebbeler I* court could not, and did not, decide whether the Escrow Defendants caused the transaction to fail because they were not parties to the suit and their responsibility for the failed transaction was not material to the outcome of that litigation. To the extent the trial court's findings in *Ebbeler I* addressed the Escrow Defendants' causal responsibility for the failure of the transaction, those findings were not "ultimate facts" with preclusive effect because they were not essential to the claims or defenses raised in the prior action. *See id.*; *Eggleston*, 164 Wn.2d at 74.

The Escrow Defendants' reliance on our unpublished opinion in *Sullivan v. Skinner & Saar*, No. 77516-2-I (Wash. Ct. App. Jan. 28, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/775162.pdf, is misplaced. In *Sullivan*,

property owners began building a fence near their boundary line after their attorney incorrectly advised them that they did not share an easement with their neighbors. *Id.* at 2. The attorney later discovered the easement and informed the owners of its existence, but they nevertheless continued building the fence into the easement. *Id.* at 3. When the neighbors filed an action to quiet the owners' title to the easement, the court determined the owners had abandoned the easement by continuing to construct their fence after their attorney notified them of its existence. *Id.* at 5-6. In the owners' subsequent malpractice action against their attorney for damages based on their loss of the easement, our court applied issue preclusion on appeal to bar their claims because the initial action "resolve[d] the issue of causation of the Sullivans' loss of their easement" by "attribut[ing] abandonment of the easement to the Sullivans' actions . . . after being advised [by their attorney] that an easement was recorded." *Id.* at 10. The circumstances here are vastly different. Whereas the trial court in the initial action in *Sullivan* absolved the owners' attorney of blame and found the owners entirely responsible for their loss of the easement, the trial court in *Ebbeler I* implied that the Escrow Defendants may be at least partially to blame for the failure of the transaction. Accordingly, *Sullivan* does not support the Escrow Defendants' argument that the trial court correctly dismissed the Ebbelers' claims on issue preclusion grounds.[3]

Lastly, the Escrow Defendants contend that applying issue preclusion to bar the Ebbelers' claims would not be unjust because the Ebbelers could have named the Escrow Defendants as parties to *Ebbeler I*. This argument is unpersuasive

---

[3] Furthermore, we are not bound by *Sullivan* because it is an unpublished opinion with no precedential value. *See* GR 14.1(a).

because Washington law permits a purchaser in a real estate contract to maintain separate causes of action against the seller and the escrow company for damages incurred in connection with the real estate transaction.  *See Sanwick v. Puget Sound Title Ins. Co.*, 70 Wn.2d 438, 444, 423 P.2d 624 (1967).  The Escrow Defendants' attorney appropriately acknowledged at oral argument that the Ebbelers were not required to join the Escrow Defendants as necessary parties to *Ebbeler I* under CR 19.  Thus, the Ebbelers' decision to not name the Escrow Defendants as parties to *Ebbeler I* does not require us to apply issue preclusion in *Ebbeler II*.

In sum, the issues in *Ebbeler I* and *II* are not identical with regard to the critical causation issues in the two lawsuits, and applying issue preclusion here is unjust.  For these reasons, the causation findings in *Ebbeler I* as set forth in paragraph 98 of the trial court's conclusions of law and paragraph 7 of its order of the court (*see supra* at footnote 2) are not entitled to issue preclusive effect in *Ebbeler II*.  The trial court thus erred in dismissing the Ebbelers' claims based on issue preclusion principles.[4]

---

[4] In granting summary judgment solely on the basis of issue preclusion, the trial court did not address the Escrow Defendants' additional arguments regarding the independent duty doctrine, lack of intent or improper purpose for the tortious interference claim, and public interest impact for the CPA claim.  Given the lack of sufficient briefing on these issues and our dispositive ruling regarding issue preclusion principles, we decline to reach these other arguments.  *See Christian v. Tohmeh*, 191 Wn. App. 709, 727-28, 366 P.3d 16 (2015) ("[T]his court does not review issues not argued, briefed, or supported with citation to authority.") (citing RAP 10.3(a)(6)); *Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd.*, 177 Wn.2d 136, 146-47, 298 P.3d 704 (2013) (appellate courts "retain wide discretion in determining which issues must be addressed in order to properly decide a case on appeal" and "must address only those claims and issues necessary to properly resolving the case as raised on appeal by interested parties").  We express no opinion on these additional issues, nor do we express any opinion on whether other findings in *Ebbeler I* also are not entitled to preclusive effect in light of our ruling herein.

### III

Because we reverse the trial court's summary judgment ruling in favor of the Escrow Defendants, we also vacate the trial court's award of prevailing party attorney fees and costs because the Escrow Defendants are no longer prevailing parties. For similar reasons, we decline to award appellate attorney fees to either party. *See Wash. Fed. v. Gentry*, 179 Wn. App. 470, 496, 319 P.3d 823 (2014) ("Because a prevailing party has not yet been determined and will not be determined until after [further proceedings] on remand, we decline to award fees now. That determination may be made by the trial court at such time as it makes an award of reasonable attorney fees.").

Reversed and remanded.

Feldman, J.

WE CONCUR:

Birk, J.

Smith, C.J.